[Sac. No. 72. Department Two.—June 4, 1896.]

WILLIS T. WARNER, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

RAILROADS—WRONGFUL EJECTION OF PASSENGER—CONFLICTING EVIDENCE. When the evidence is conflicting as to whether the plaintiff was forcibly ejected from a railroad car for nonpayment of fare, after he has surrendered his ticket to the conductor, a verdict for the plaintiff cannot be disturbed upon appeal for insufficiency of the evidence to justify the verdict.

ID.—EXCESSIVE DAMAGES.—A verdict of five thousand dollars damages for the wrongful ejection of a passenger is excessive, and grossly beyond all reasonable limit, where there is no pretense that the plaintiff suffered any serious injury, and he claimed only ten dollars for loss of time and five dollars for his doctor's bill, and where, under any view of the evi-

dence most favorable to the plaintiff, the damages for humiliation or injury to his dignity should not have exceeded a few hundred dollars at the utmost limit.

ID.—EXEMPLARY DAMAGES NOT PERMISSIBLE.—A railroad company cannot be mulcted in exemplary damages for the wanton or malicious acts of its conductor in wrongfully ejecting a passenger, unless it either authorized or ratified the malicious acts; and, in the absence of such authority or ratification, the passenger can only recover from the railroad company the actual damage sustained by him from such ejection.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. J. R. WEBB, Judge.

The facts are stated in the opinion of the court.

*J. B. Campbell, R. B. Terry,* and *William F. Herrin,* for Appellant.

The evidence is insufficient to sustain the verdict. The verdict was excessive, and was manifestly rendered under the influence of passion or prejudice.    (Code Civ. Proc., sec. 662; *Memphis etc. R. R. Co.* v. *Weaver,* 16 Kan. 456; *Malecek* v. *Tower Grove etc. Ry. Co.,* 57 Mo. 17; *Zion* v. *Southern Pac. Co.,* 67 Fed. Rep. 500.)    Exemplary damages are not recoverable against a master for the malicious or wanton acts of a servant, where such acts are not sanctioned or ratified by the master.    (*Turner* v. *North Beach etc. R. R. Co.,* 34 Cal. 594; *Wade* v. *Thayer,* 40 Cal. 578; *Mendelsohn* v. *Anaheim Lighter Co.,* 40 Cal. 657; *Wardrobe* v. *California Stage Co.,* 7 Cal. 119, 120; 68 Am. Dec. 231; *Lake Shore etc. Ry. Co.* v. *Prentice,* 147 U. S. 101; *Ricketts* v. *Chesapeake etc. Ry. Co.,* 33 W. Va. 433; 25 Am. St. Rep. 901; *Donivan* v. *Manhattan Ry. Co.,* 21 N. Y. Supp. 457; *Sullivan* v. *Oregon Ry. & Nav. Co.,* 12 Or. 392; 53 Am. Rep. 364; *McGown* v. *International etc. Ry. Co.,* 85 Tex. 289; *Pittsburgh etc. Ry. Co.* v. *Russ,* 57 Fed. Rep. 822; *Hagan* v. *Providence etc. Ry. Co.,* 3 R. I. 88; 62 Am. Dec. 377; *Cleghorn* v. *New York etc. R. R. Co.,* 56 N. Y. 47, 48; 15 Am. Rep. 375; *McKeon* v. *Citizens' Ry. Co.,* 42 Mo. 79; *Boulard* v. *Calhoun,* 13 La. Ann. 445; *Ackerson* v. *Erie Ry. Co.,* 32 N. J. L. 254; *Great Western Ry. Co.* v. *Miller,* 19 Mich. 305.)

*Frank H. Short,* and *Mark Walser,* for Respondent.

The verdict was justified by the evidence. The damages were not excessive. (*Swain* v. *Fourteenth Street R. R. Co.,* 93 Cal. 179; *Robinson* v. *West. Pac. R. R. Co.,* 48 Cal. 409; *Morgan* v. *Southern Pac. Co.,* 95 Cal. 501; 3 Thompson on Corporations, sec. 3967, et seq; Civ. Code, sec. 3294.) The acts of the conductor were ratified by the answer in this case, alleging that he acted in the performance of his duties. (*Milwaukee etc. R. R. Co.* v. *Finney,* 10 Wis. 388; *Craker* v. *Chicago etc. Ry. Co.,* 36 Wis. 657; 17 Am. Rep. 504; *Travers* v. *Kansas Pac. Ry. Co.,* 63 Mo. 421; *Illinois Cent. R. R. Co.* v. *Hammer,* 72 Ill. 347.)

McFARLAND, J.—This is an appeal by defendant from a judgment in favor of plaintiff, and from an order denying a new trial.

The material averments of the complaint are, that while plaintiff was traveling on a railroad train of defendant from Fresno to Fowler, and after he had given to the conductor a proper ticket, the latter demanded of plaintiff a second fare, and applied to him abusive epithets, and forcibly ejected him from the car in which he was riding onto the platform, and, with other employees of defendant, assaulted and beat him, and threatened to throw him from the moving train, to his damage in the sum of twenty-five thousand dollars; and that by reason thereof he was unable to attend to business for six days, and was compelled to employ a physician, to whom he incurred for medical services a bill of five dollars, and that his loss of time was of the value of ten dollars. All these averments are denied in the answer; and it is also therein averred that plaintiff was intoxicated, boisterous, profane, etc., in the presence of the other passengers, including women and children, and made of himself an absolute nuisance, and that defendant's employees used no more force than was necessary to keep him quiet and protect themselves and the other passengers.

The evidence was conflicting as to some of the main facts. After the train started from Fresno toward Fowler the plaintiff and some companions, among whom were three men named Griffin, Gray, and Metcalf, were collected around and near the stove in the rear end of the car. The evidence shows beyond doubt that some of this party were boisterous and more or less intoxicated, and used loud, profane, and obscene language, to the great annoyance of the passengers, some of whom were ladies. Whether or not plaintiff personally was guilty of such conduct is a matter about which the witnesses differed. The plaintiff and Gray testified that plaintiff did not use any bad language prior to a certain personal conflict with the conductor, to be noticed hereafter, but plaintiff admitted that he did use such language after said conflict; while other witnesses, particularly Thompson, Patterson, Willow, and Waggener, testified that he used such language all the time, and kept it up until the train reached Fowler, and drew and flourished a knife.

As to the personal conflict above referred to there is a very decided conflict of evidence. The plaintiff's testimony was in substance this: He was sitting on the coalbox with some other persons, including Griffin, Gray, and Metcalf, near him, when Gordon, the conductor, came through the car taking up tickets. Griffin had no ticket, but gave the conductor a dollar which he put in his pocket. Plaintiff then gave the conductor his ticket, which the former accepted, punched and put in his pocket, and was about to go out of the door when Griffin asked him for his change. The conductor told Griffin to "keep his shirt on," and went out, but returned "in a minute or two," and gave him his change. He then turned to plaintiff and said, "you have not paid your fare." Plaintiff, according to his statement, said, "I beg your pardon, I have"; whereupon the conductor immediately called him a G—d d——d liar, and said that he would throw him off if he didn't pay. Plaintiff said: "I don't wish to be thrown off; if that

ain't satisfactory, I am willing to pay you a second time." But the conductor, without waiting to be paid the second time, caught him by the shoulder, and plaintiff, slipping, was drawn by the conductor through the door onto the platform, and there held down and beaten. Such are the main features of plaintiff's testimony; and as to the most important facts stated by him he was corroborated by Gray and Griffin, and to some extent by the witness Treece.

The testimony of the conductor as to this personal conflict was radically different from that of plaintiff, and was substantially this:. When he reached the end of the car, he took tickets from plaintiff and two other men near the stove, Griffin giving him a ticket and not money, and was about to go out of the door when an employee of the defendant who was traveling on the car told him that he had missed a man behind the stove; and, turning back, he discovered Metcalf and asked him for a ticket, and Metcalf said that he had given him one. The conductor told him that he had not, and he replied that he would not pay any more, whereupon the conductor informed him that he must pay or get off, and reached over and took hold of Metcalf and raised him up. At that moment Griffin grabbed the conductor by the shoulders, and either Griffin or plaintiff said that no d——d conductor could put his friend off the train. The conductor then let go of Metcalf, and a personal conflict occurred between the conductor *and Griffin,* which ended in both landing on the platform, Griffin being down and the conductor on top of him; and the former crying to be let up, the conductor did so, and went back into the car where he then collected Metcalf's fare without further trouble. He then went out of that car and did not return to it until after Fowler, where plaintiff got off, had been passed. According to his testimony he never struck plaintiff, or laid hands on him, or touched him, or had any personal conflict with him whatever. In this testimony he was fully corroborated by Willetts, who was a brakeman, fol-

lowing the conductor through the car; by Powers, who was also a brakeman, and was present and witnessed the occurrence; and by the witnesses Willow and Thompson, who had no business relation with the defendant, but happened to be passengers on the car when the difficulty occurred. All of these witnesses testified positively that there was no personal collision between the conductor and plaintiff, and that it was entirely between the former and Griffin. Upon the cross-examination of Griffin, he admitted that he had verified a complaint in an action brought by himself against the defendant for damages sustained on this same occasion; which action was afterward dismissed.

Counsel for appellant strongly argue that the evidence—the outlines and substance of which are above given—is insufficient to sustain the finding of the jury that the conductor ever touched the plaintiff or injured him in any manner whatever. They argue that the story of plaintiff is so improbable and unnatural, that whatever reason there might be for believing it, if it stood alone, is entirely swept away by the testimony of the witnesses for defendant. And it is, indeed, somewhat difficult to believe that a conductor having any regard for his own interest and safety would refuse to receive an offer to pay fare by a passenger, and immediately commence an unprovoked attack upon him under the circumstances testified to in this case by plaintiff. However, we are not prepared to say that the evidence in favor of plaintiff was so slight as to warrant us in denying the power of the jury to base their verdict upon it. There was a sufficient conflict to put the determination of the issue within their province.

But the amount of damages allowed was grossly beyond all reasonable limit. There is no pretense that plaintiff suffered any serious injury. He complained of a bruised leg, but the testimony of his physician shows only trifling injury. In his complaint he claims only ten dollars for loss of time, and five dollars for his doctor's bill. Under the circumstances shown by the

evidence, he certainly was not entitled to much for humiliation or injury to his dignity. Under any view, as favorable to plaintiff as could be. justly taken, the damages awarded should not have exceeded at the utmost limit a few hundred dollars. Yet the verdict was for five thousand dollars. The excessive verdict was no doubt the result, to a great extent, of the erroneous instructions of the court, given in various forms, that the case was one in which punitive or vindictive damages might be awarded against the defendant. It is not to be supposed that the jury really thought that plaintiff . had suffered actual damage to the extent awarded by the verdict. Indeed, counsel for plaintiff say that the verdict rests mainly upon "the gross and malicious conduct of *the defendant* toward" the plaintiff. And yet it is quite clear that "the defendant"—the employer of the conductor—was not guilty of any "gross and malicious conduct."

It was a question formerly whether an employer could, under any circumstances, be held liable for even compensatory damages caused by the wanton and malicious acts of his employee. In the recent case of *Stephenson* v. *Southern Pac. Co.*, 93 Cal. 558, 562, 27 Am. St. Rep. 223, it was held that the defendant was not liable for damages caused by the wanton and mischievous backing of a locomotive by an engineer with intent to frighten passengers on an approaching street car. Perhaps the rule now is, and we will assume it to be so for the purposes of this case, that the master is liable for *actual damage* caused by an act of the servant done in the execution of authority given by the master, although it was caused "by a wanton and reckless purpose to accomplish the master's business in an unlawful manner"; but it is not the law that in such a case the master is liable for more than will compensate the injured person for the damages which he has sustained. The master is not liable in such a case for vindictive damages, or "smart money," unless he had either authorized the malicious act of the servant beforehand,

or had ratified it afterward. There are some authorities the other way; but the preponderance of adjudicated cases, and the entire force of the reasoning upon the subject, establish the law as above stated. The entire basis of the doctrine of vindictive damages is that the *person,* himself, *who is sued* has been guilty of recklessness or wickedness which amounts to a criminality that should be punished for the good of society, and as a warning to the individual; but to award such damages against the master for the criminality of the servant is to punish a man for that of which he is not guilty. If the driver of a merchant's delivery wagon should wantonly run over another person, it would be hard enough for the master to be held liable for all actual damage caused by the unlawful act of his servant; but to go beyond that and allow a jury, in addition to compensating the injured party for his loss, to inflict further damages as a punishment for something which he did not do, would be to allow a gross outrage not sanctioned by any principle of justice.

The decisions outside of this state establishing the principle above declared are innumerable; but it is unnecessary to refer to them here in detail, because the leading cases on the subject are referred to and cited in the comparatively recent case of *Lake Shore etc. Ry. Co.* v. *Prentice,* 147 U. S. Rep. 101, in which the supreme court of the United States reviewed the whole subject, and held the law to be as hereinbefore declared. In that case the only question before the court was whether a railroad company could be charged with punitive damages for wrongful treatment of a passenger by a conductor; so that the whole attention of the court was directed to that one point. There a conductor had been guilty of grossly oppressive acts toward the plaintiff, who was a passenger, because the latter had offered tickets which the conductor deemed insufficient, and had subjected him to great humiliation; and counsel for defendant admitted at the trial that plaintiff "was entitled to recover actual damages." But the trial court

instructed the jury that, "after agreeing upon the amount which will fairly compensate the plaintiff for his outlay and injured feelings, you may add something by way of punitive damages against the defendant, which is sometimes called 'smart money', if you are satisfied that the conductor's conduct was illegal (and it was illegal), wanton, and oppressive"; and for giving this instruction, and for this alone, the judgment was reversed. Counsel for defendant in error in the opening of his brief, said: "But one question arises upon the record, and that is, under the facts, is plaintiff in error liable for punitive damages"; and the court, at the commencement of its opinion, said: "The simple question presented for our decision, therefore, is whether a railroad corporation can be charged with punitive damages for the illegal, wanton, and oppressive conduct of a conductor of one of its trains toward a passenger." Therefore, the opinion in that case was an absolute, definite *decision* of the point, and not a mere statement of *dicta* about a question not necessarily involved. The opinion delivered by Mr. Justice Gray is quite long and exhaustive. We will make from it only a few quotations to show its general character. The court, among other things, say: "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent." Again, the court uses the language employed in *Keene* v. *Lizardi*, 8 La., 26, 33, as follows: "It is true juries sometimes very properly give what is called 'smart money.' They are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct. But this is only justified in an action against the wrongdoer, and not

against persons who, on account of their relation to the offender, are only consequentially liable for his acts, as the principal is responsible for the acts of the factor or agent"; and then cites a large number of cases, including one from California, which are said to be "to the same effect." And again the court say that "the rule has the same application to corporations as to individuals." Again the court say: "The jury were thus told, in the plainest terms, that the corporation was responsible in punitive damages for wantonness and oppression on the part of the conductor, although not actually participated in by the corporation. This ruling appears to us to be inconsistent with the principles above stated, unsupported by any decision of this court, and opposed to the preponderance of well-considered precedents." Again the court say: "The law applicable to this case has been found nowhere better stated than by Mr. Justice Brayton, afterward chief justice of Rhode Island," in *Hagan* v. *Providence etc. R. R. Co.*, 3 R. I. 88; 62 Am. Dec. 377; and numerous quotations are made from the opinion of Justice Brayton, of which we take the following: "If, in such cases, or in any case of a civil nature, it is the policy of the law to visit upon the offender such exemplary damages as will operate as punishment, and teach the lesson of caution to prevent a repetition of criminality, yet we do not see how such damages can be allowed where the principal is prosecuted for the tortious act of his servant unless there is proof in the case to implicate the principal and make him *particeps criminis* of his agent's act." A quotation to the same effect is made from the court of appeals of New York; and the court say that "similar decisions, denying upon like grounds the liability of railroad companies and other corporations sought to be charged with punitive damages for the wanton or oppressive acts of their agents or servants, not participated in or ratified by the corporation, have been made by the courts of New Jersey, Pennsylvania, Delaware, Michigan, Wisconsin, California, Louisiana, Alabama, Texas,

and West Virginia." It is clear, therefore, that under the general authorities, including the decision of the highest court in the land, the law is established as heretofore declared.

Turning to our own state we find that, with the single exception of some expressions in the opinion delivered in one of the departments in *Gorman* v. *Southern Pac. Co.*, 97 Cal. 1, 33 Am. St. Rep. 157, the decisions here have been in harmony with and declaratory of the principle above stated. The first cause involving the point is *Wardrobe* v. *California Stage Co.*, 7 Cal. 119; 68 Am. Dec. 231. In that case the plaintiff was injured while on a stage coach of defendant driven by defendant's servant, and the trial court instructed the jury that, if the stage was driven recklessly at the time of the disaster, " then they should find, not only the actual damages sustained by the plaintiff, but they should give additional damages such as would be an example thereafter," etc., and the appellate court held such instruction to be erroneous, and for that reason reversed the judgment. In its opinion the court, after alluding to other matters, say: " In the second place, it is shown that the stage at the time of the accident was driven by the servant or agent of the defendant, and the rule in such cases is that the principal is liable only for simple negligence, and that exemplary damages cannot be imposed upon him." The court refers at length to the early leading case upon the subject in *The Amiable Nancy*, 3 Wheat. 546, in which the opinion was written by Judge Story.

In *Turner* v. *North Beach etc. R. R. Co.*, 34 Cal. 594, the plaintiff was wrongfully ejected from a car of defendant (a railroad corporation) by a conductor; and the trial court instructed the jury that the injury to plaintiff, if committed by the conductor willfully, etc., " entitled her to what is called exemplary damages," and the court for this reason, although the verdict was for only seven hundred and fifty dollars, reversed the judgment. Mr. Justice Crockett, in delivering the opin-

ion of the court after a full discussion of the principles
involved, said: "Tested by these principles, it is obvi-
ous that in this case the defendant was not liable for
any malicious and wanton conduct of the conductor.
If liable at all, its liability must be confined to the actual
damage which the plaintiff suffered.   To render the
defendant liable for punitive damages, it was incum-
bent on the plaintiff to show that the act complained of
was done with the authority, either express or implied,
of the defendant, or was subsequently adopted by the
company.   (*Hagan* v. *Providence etc. R. R. Co., supra.*)"
Again he says: "If her expulsion resulted from malice
of the conductor, or was accompanied by violence and
personal indignity, the conductor is alone responsible
for such damages as she may be entitled to for this
cause *beyond the actual damage* resulting from the expul-
sion from the car, unless, as before stated, the company
expressly or tacitly participated in the malice and vio-
lent conduct of the conductor.   In other words, if the
act of the conductor was wholly unauthorized " (but, of
course, done without the general scope of his authority),
" the company is liable for the actual damage, and the
conductor alone for the punitive damages, if any."   No
other case can be found in the books which more fully
and definitely declares the law to be as we have stated
it.   This case was referred to and approved in *Wade* v.
*Thayer*, 40 Cal. 586.   In *Mendelsohn* v. *Anaheim Lighter
Co.*, 40 Cal. 657, which was an action for damages al-
leged to have been done to certain lumber of plaintiff,
the trial court charged the jury "that, if the damage
to the lumber was wantonly and maliciously caused by
the defendant, the jury might give punitive damages";
but the judgment was reversed because there was no
evidence that the defendant had done or participated
in any wanton and malicious acts—such acts if done at
all having been committed by defendant's servants.
The court said: " But whilst there was evidence tending
to show that the damage to the lumber was caused by the
malicious and wanton acts of the agents and servants of

the defendants, I discover nothing in the record tending to prove that the defendant authorized or consented to the malicious conduct of its agents and servants, or approved it afterward; and it is well settled that, though the principal is liable for the actual damage caused by the act of his agent done in the usual course of his employment, he is not responsible for wanton and malicious damage done by the agent without the consent, approval, or subsequent ratification of the principal. In the case of *Turner* v. *North Beach etc. R. R. Co., supra,* we had occasion carefully to consider this question, and announced the rule to be as above stated; and have reaffirmed it in the case of *Wade* v. *Thayer* (decided at the present term). I am, therefore, of opinion that the court erred in giving the fifth instruction requested by the plaintiff, there having been no evidence to support it. As the judgment must be reversed for this cause, I deem it unnecessary to notice the other errors assigned."

The foregoing cases establish the law in this state in harmony with the current of general authority; and they are not to be taken as overruled by what was said in the opinion in *Gorman* v. *Southern Pac. Co., supra.* In this latter case it was averred in the complaint that the plaintiff was wrongfully and with force expelled and ejected from defendant's train, and damages were prayed for in the sum of ten thousand dollars. The jury returned a verdict for plaintiff in the comparatively small sum of five hundred dollars, and a close examination of the case will show that the only real question before the court was whether this small amount of damages was—independent of any question of punitive damages—so excessive as to warrant the court to set it aside. The trial court did not instruct the jury that they could give punitive damages, and we cannot see how the question of punitive damages was at all involved in the case. All that we know about instructions asked by the defendant and refused is contained in the sentence from the opinion of the commissioner

delivered in department: "The instructions refused were asked upon the theory that the plaintiff could in no event recover more than his actual damages, *and that* such damages could not exceed the cost of a ticket from the point where he was expelled to the point of his destination, together with a reasonable allowance for the loss of time." Of course, these instructions were erroneous, because they involve the proposition that damages must be confined to the price of a ticket and loss of time—leaving out entirely injury to the feelings, humiliation, disgrace, etc. The question of punitive damages was not, therefore, necessarily involved. The whole case was decided in these words of the opinion: "We see nothing in this case to indicate that the jury acted under the influence of passion or prejudice, and, in our opinion, the verdict cannot be disturbed on the ground that the damages were excessive"; and what is said about vindictive damages is *dictum*. That the Department did not intend to overrule or disturb the former decisions of this court upon the subject of punitive damages, is apparent from the fact that no allusion was made to them.

There are some other minor questions in the case, but they are not likely to arise upon another trial, and we do not deem it necessary to extend this opinion by discussing them. The judgment must be reversed, because the damages found by the jury were excessive, and because the trial court erroneously instructed the jury that the case was a proper one for punitive damages against the defendant.

The judgment and order denying a new trial are reversed and the cause remanded.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.