[Sac. No. 295. Department Two.—June 3, 1898.]

CHARLES TRABING, a Minor, by Minnie Jones, his Guardian ad litem, Respondent, v. CALIFORNIA NAVIGATION AND IMPROVEMENT COMPANY, Appellant.

COMMON CARRIERS—PERSONAL INJURY TO PASSENGER—PLEADING—AMBIGUITY. In an action to recover damages against a corporation engaged in operating a line of steamboats for personal injuries inflicted upon the plaintiff while traveling as a passenger upon one of its steamers, a complaint alleging that the injuries described therein were committed "by the defendant's servants and agents," who were at said time "in charge of said steamer," sufficiently distinguishes between those who were authorized to represent the defendant in the management and control of the boat and its business, and those who were merely laborers under their control, and is not ambiguous in that regard.

ID.—CONTINUING INJURY—SINGLE CLAIM OF DAMAGES.—Where the complaint alleged that plaintiff had paid the regular fare as a passenger to a certain destination, and that the defendant's servants and agents in charge of the steamer wrongfully placed handcuffs on the plaintiff, and took him to the lower deck of the steamer, and chained him to a post in such a way as to cause him great bodily pain, and kept him chained thereto until the steamer reached a place short of the destination to which he had paid his fare, and then and there wrongfully ejected him from the steamer against his will, it sufficiently shows a continuing wrong and injury, which in law was one and indivisible, and stated a single ground of recovery, and properly makes a single statement of the entire damage sustained in one sum; and is not demurrable for ambiguity in not showing from what particular acts the damages were suffered.

ID.—WANTON INJURY BY CAPTAIN OF VESSEL.—Where it appears that the acts constituting the alleged wrongs and injuries done to the plaintiff were done and performed on defendant's steamboat in its operation as a common carrier by the captain in charge thereof, in the line of his employment, the defendant is liable in damages for all that the captain wrongfully did to the plaintiff in the execution or attempted execution of his authority, even though the captain acted from wanton or malicious motives, or resorted to unlawful means in executing it; and that the injuries were willfully or wantonly inflicted does not relieve the defendant from liability.

ID.—COMPENSATORY DAMAGES—WRONG NOT SANCTIONED BY CARRIER—INSTRUCTIONS.—Where the defendant corporation did not direct the captain of the steamboat to perpetrate the wrongs complained of, and it does not appear that it subsequently ratified the acts constituting the injury, the corporation is liable for compensatory damages for the injury, but is not liable for exemplary damages; and it is error in

such case to give an instruction which in effect leaves the question of exemplary damages to the jury, and to refuse an instruction that, "in cases of this kind, the plaintiff can recover only the actual damages suffered by him, unless the master authorized the commission of the acts complained of, or participated therein, or ratified it after its commission."

EVIDENCE—IMPEACHMENT OF WITNESS—COLLATERAL MATTER.—Where a witness is cross-examined as to collateral matters not testified to in chief, the party conducting the cross-examination is bound by the answers of the witness as to such matters, and cannot contradict such answers by other evidence for the purpose of impeaching the witness; and, in such case, the fact that the witness was the guardian *ad litem* of the plaintiff cannot make the examination of impeaching witnesses proper or admissible.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Ansel Smith, Judge.

The facts are stated in the opinion.

Woods & Levinsky, for Appellant.

Nicol & Orr, F. H. Gould, and E. M. Billings, for Respondent.

HAYNES, C.—The plaintiff is a minor, and was of the age of fourteen years at the time of the injuries complained of. The defendant is a corporation engaged in operating a line of steamboats between San Francisco and the city of Stockton for the transportation of passengers and freight to and from those places and intermediate ports. The additional facts constituting plaintiff's cause of action, as alleged in the complaint, may be summarized as follows:

On the evening of March 23, 1895, at about 8 o'clock, the plaintiff boarded defendant's steamer, "Mary Garratt," at Benicia, to be carried to the city of Stockton, and paid therefor fifty cents, that being the regular fare; that when the steamer was but a short distance from Benicia the defendant's servants and agents in charge of said steamer "wrongfully placed on the plaintiff iron handcuffs and took him down into and upon the lower deck of said steamer, and there chained him to a post in such a way and manner as to cause him great bodily pain; that plaintiff was so kept by said defendant's said servants and agents ironed and chained to said post as said steamer proceeded

on its said trip, and until said steamer on its said trip reached the town of Antioch, at which last-named place said defendant's said servants and agents removed said irons from said plaintiff and then and there against his will wrongfully ejected him from said steamer," to his damage in the sum of five thousand dollars.

A demurrer to the complaint was overruled, and the defendant answered, and after denying specifically the allegations of the complaint, with the qualification, "save and except as hereinafter set forth," alleged, in substance, that after the steamer left Benicia the plaintiff refused to pay his fare and "used violent, profane, abusive, vile, and obscene language to and toward the captain of said steamer, who was then in charge of said steamer, in the presence of the passengers," that by reason of said language and conduct he was compelled to and did place handcuffs upon him and chain him to a post on the lower deck, that it caused plaintiff no pain, and that he was released and put ashore at Antioch.

The jury found for the plaintiff and assessed his damages at two thousand five hundred dollars. This appeal is by the defendant from the judgment and an order denying its motion for a new trial.

1. The demurrer to the complaint was general and special; the latter, upon the ground of ambiguity, in that it did not show whether the plaintiff suffered damage in said sum by reason of being handcuffed, or by reason of being chained to a post, or by reason of being ejected from the steamer; and because it does not show which of defendant's servants did these things.

In appellant's brief only the special demurrer is considered, and we shall therefore assume the sufficiency of the complaint as against a general demurrer; and we also think the complaint sufficient as tested by the special demurrer. The wrongs and injuries complained of are alleged to have been committed by the defendant's servants and agents "who were at said time in charge of said steamer." This allegation sufficiently distinguishes between those who were authorized to represent the defendant in the management and control of the boat and its business, and those who, though employees and servants, were merely laborers and under the immediate control of those "in

·charge of said steamer." Whether, if these alleged wrongs and injuries had been perpetrated by the deckhands of their own motion, and without the direction of anyone in control of the steamer and its business, the defendant would not be liable, upon the ground that it was its.duty to prevent it, need not be considered.

2. That the alleged wrong and injury was a continuing one, and was in law one and not divisible, and states a single ground of recovery, and that a single statement of the entire damage sustained, in one sum, is proper, see *Sloane v. Southern Cal. Ry. Co.,* 111 Cal. 685.

3. Defendant's motion for a nonsuit at the conclusion of plaintiff's evidence in chief was properly denied.

Said motion was based upon the ground that: "The evidence on the part of the plaintiff shows that the acts of the captain of the steamer 'Mary Garratt' in the arrest and imprisonment of the plaintiff were a willful and wanton wrong and trespass on the part of the captain, and there is no evidence to show that the same were authorized by the defendant or subsequently ratified by it."

The answer of defendant, as well as the evidence given on behalf of the plaintiff, shows that all the acts of the captain constituting the alleged wrongs and injuries were done and performed upon defendant's boat in its operation as a common carrier by the captain in charge thereof, in the line of his employment. That he was authorized by the defendant to see that persons being transported upon the said steamer paid their fare, and to collect the same, and to remove from the steamer those who, not having paid their fare, refused to pay it when demanded, cannot be questioned. That was not only "in the line of his employment," but one of the very purposes for which he was employed; and that defendant is liable in damages for all that the captain wrongfully did to the plaintiff in the execution, or attempted execution, of that authority, even though the captain acted from wanton or malicious motives, or resorted to unlawful means in executing it, is amply sustained by the modern authorities and among them several of those cited by appellant. (See Cooley on Torts, 2d ed., 625, et seq. (*534, et seq.), and numerous cases there cited; Thompson on Negligence, sec.

4, p. 886, treating of willful and malicious acts of servants; *Rounds v. Delaware etc. Ry. Co.*, 64 N. Y. 129; 21 Am. Rep. 597; *Lothrop v. Adams*, 133 Mass. 471, 480; 43 Am. Rep. 528; *Lake Shore etc. Ry. Co. v. Prentice*, 147 U. S. 109, 111; *Stephenson v. Southern Pac. Co.*, 93 Cal. 558; 27 Am. St. Rep. 223; *Warner v. Southern Pac. Co.*, 113 Cal. 111; 54 Am. St. Rep. 327; *Gorman v. Southern Pac. Co.*, 97 Cal. 1; 33 Am. St. Rep. 157.)

That the injuries were willfully or wantonly inflicted does not relieve the defendant from liability. In *Lake Shore etc. Ry. Co. v. Prentice, supra*, the supreme court of the United States said: "A corporation is doubtless liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly or against the express orders of the principal." (Citing several cases.)

4. It is further contended that the evidence is insufficient to justify the verdict.

This contention is based: 1. Because the injuries were willfully inflicted by the captain; 2. That plaintiff provoked the injuries by his own misconduct; and 3. That the damages suffered were merely nominal; and, for the first and second of these reasons, it is also contended, 4. That the verdict is against law.

So far as these points are not disposed of by what has already been said, they may be considered under appellant's next point, which is:

5. That the damages are excessive, and were given under the influence of passion and prejudice.

The plaintiff testified, in substance, that he came to the boat accompanied by his brother Louis, and his friends Ray Barrington and H. Starkey; that the purser came to the wharf end of the gangplank and sold tickets; that his brother gave him fifty cents —that being the full fare to Stockton; that he bought a ticket and went on the boat and gave his ticket to a man at the boat end of the gangplank, went onto the passenger deck and stood at the rail for about ten minutes until the boat started; that after the boat started the captain accosted him, demanding his fare; that plaintiff replied, "I paid my fare"; that the captain said, "You lie. You did not. Come with me"; that the captain

put handcuffs on him and took him down to the Chinese den under the engineroom and chained his arms round a post, and kept him thus chained about three hours, until the boat reached Antioch, when he was released and told to "get out of here," and was put ashore; that while he was handcuffed with his arms around the post the handcuffs hurt his arms; that he could sit down, but while sitting he was kept bent so that he was more comfortable standing up; that he had no money when he was put off the boat, and knew no one in Antioch; that it was then about midnight; that he spent the remainder of the night under the sidewalk and next day walked back to Port Costa, a distance of thirty miles, crossed the straits in a fishing boat and reached Benicia about dark. In his testimony that he bought a ticket and went onto the boat on the gangplank, plaintiff was fully corroborated by his brother and by Barrington and Starkey. The captain testified that plaintiff came on the boat from the piling, amidships, and not by the gangplank, and in this he was corroborated. The only abusive language used by the plaintiff before he was taken down into the hold, according to the captain's testimony, was that when he asked him for his ticket he replied, "Take it if you can, and be damned to you"; that the other abusive language was used after he had taken him downstairs and saw that he was going to handcuff him, when he called him a "Dutch son of a bitch."

Without stopping to notice the evidence tending to corroborate or contradict the testimony given on behalf of the respective parties, it is clear that there was ample evidence to sustain a verdict for the plaintiff for compensatory damages. The credibility of the witnesses and the weight of the evidence were exclusively for the determination of the jury.

It is contended by appellant that the jury must have included exemplary damages in their verdict; that the amount awarded the plaintiff cannot be otherwise explained.

We cannot determine from the amount awarded whether it includes exemplary damages or not. If the jury were properly instructed upon that subject, an excess in the amount given should be very clear to justify this court in disturbing their conclusion. The question, therefore, turns upon the instructions given and refused.

If the action had been against the captain in charge of the steamer, an instruction to the jury that they might, if they deemed it proper, give exemplary damages if they should find the facts to be as claimed by the plaintiff, would have been proper.   But the defendant, the corporation, not having directed the captain to perpetrate the wrongs complained of, while liable for compensatory damages, is not liable for exemplary damages unless it should be made to appear that it ratified the captain's acts, and it is not claimed on behalf of the plaintiff that there was any such direction or ratification.   That unless the acts constituting the injury were directed by the corporation, or subsequently ratified by it, exemplary damages cannot be given, see *Warner v. Southern Pac. Co.*, 113 Cal. 105, 54 Am. St. Rep. 327, and *Lake Shore etc. Ry. Co. v. Prentice*, 147 U. S. 106.

Upon the subject of damages the court instructed the jury, at plaintiff's request, that if they found certain facts therein enumerated, "then I charge you your verdict will  be in favor of plaintiff for such damages as under all the circumstances of the case disclosed by the evidence  appear to be just, not exceeding the sum of five thousand dollars," the sum demanded in the complaint.

The defendant requested the following instruction, which was refused: "I charge you that in cases of this kind the plaintiff can recover only the actual damages suffered by him, unless the master authorized the commission of the act complained of, or participated therein, or ratified it after its commission."

As an abstract proposition of law, the instruction given is correct, but it is too general to properly guide a jury to a correct conclusion under the facts of this case.   The instruction would apply to almost any conceivable case whether the action were against the principal or against the agent who actually committed the tort, and whether the facts did or did not justify exemplary damages.   It left the question of exemplary damages entirely to the discretion of the jury.

The instruction which was refused should have been given. It would have informed the jury that they could not give exemplary damages.   The jury were not restricted to compensatory damages, either by the instruction asked  or by any other instruction of similar import.

The exceptions to the other instructions given at plaintiff's request are not well taken. These exceptions are mainly based upon the proposition that the defendant is not liable for the willful acts of the captain, or that they did not embrace facts which would justify the captain in imprisoning the plaintiff. But no facts were either alleged or proved which could justify such imprisonment, and the jury were properly so instructed. We also think the court properly refused all the instructions requested by defendant which were refused, except the sixteenth, and as that instruction included the subject of exemplary damages, upon which the jury had not been instructed, it should have been modified by specifying the grounds upon which compensatory damages should be based, and given as thus modified.

Certain exceptions were taken by the defendant to rulings upon questions of evidence which should be briefly noticed.

Mrs. Jones, the mother of the plaintiff, was the first witness called, and in chief testified to plaintiff's age; that she had written to him to come home, and expected him the morning of the 24th; that she learned some days after that, by letter from the plaintiff, that he had been put off the boat, but was not asked, and did not testify to any of the particulars. Upon cross-examination, counsel for defendant asked her as to conversations with her son, whether he told her he had bought a ticket, to which she replied that "he said he had." She was then asked whether she had not told Mr. Parker in a certain conversation that plaintiff told her that he had not paid his fare, to which she replied she had not. She was also asked as to whether her daughter, in a conversation with Parker in her presence, had not said that plaintiff had no ticket, but that she told him to say he paid his fare and to stick to it.

This was not a cross-examination of the witness as to any matter testified to in chief, and seemed to be intended to rebut testimony which it was anticipated the plaintiff would give, and, being collateral, the defendant was bound by her answers. For the purposes of contradicting her as to the conversations with Parker, he was called as a witness by the defendant and asked as to those conversations. Two of these questions were excluded upon the ground that they called for conversations which Mrs. Jones was not asked to relate, and not of a particular fact alleged to have

been stated in the conversation. These questions were properly excluded. What she may have said to Mr. Parker was a purely collateral matter, and did not bind or affect the plaintiff; and no rule of evidence is better settled than that collateral matters cannot be elicited for the purposes of impeachment, and that a party putting such collateral questions is bound by the answers of the witness. The whole of Parker's testimony, so far as it tended to impeach the testimony of Mrs. Jones or her daughter, was improper and should have been excluded, nor did the fact that Mrs. Jones was the guardian *ad litem* of the plaintiff make the examination proper or admissible.

We advise that the judgment and the order denying a new trial be reversed and a new trial ordered.

Chipman, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed and a new trial ordered.        McFarland, J., Temple, J., Henshaw, J.