### WESTERN UNION TELEGRAPH CO. v. ALDRIDGE.

#### No. 7031.

Circuit Court of Appeals, Ninth Circuit.

June 19, 1933.

Francis R. Stark, of New York City, and Pillsbury, Madison & Sutro and Norbert Korte, all of San Francisco, Cal., for appellant.

Lakin & Leve, of Palo Alto, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Hershell E. Aldridge brought this suit against the Western Union Telegraph Company, hereinafter called the telegraph company, for compensatory and exemplary damages for its alleged breach of duty in revealing, through an employee, the contents of a telegram, dated January 22, 1931, addressed to the appellee at Palo Alto, Cal., from his divorced wife, Naoma Aldridge, in Sheridan, Wyo. The jury returned a verdict in favor of the appellee for $1 compensatory and $500 exemplary damages. The telegraph company appeals from the judgment upon the ground that neither the pleadings nor the evidence sustain the verdict and judgment for exemplary damages. No point is made by either party with reference to the judgment for compensatory damages. There was no cross-

appeal. The appellant contends there was no basis for exemplary damages against the employee who revealed the contents of the telegram and that, even if there were sufficient evidence to justify a verdict and judgment against her, the telegraph company, her employer, is not liable therefor in the absence of evidence of direct authorization or express ratification or participation in the wrongful act.

A brief statement of the facts is essential to an understanding of the situation. The appellee was engaged to be married to Ethel Farrell. By mutual consent the fact of the engagement was kept a secret. The exact date of the engagement is in dispute, but that dispute is not material here. The telegram was as follows:

"Hershel Aldridge, Base Hospital Palo Alto Calif.

"Returned from hospital Wednesday and no money you promised to send money every two weeks I am turning it over to Judge if no money in two days I need the money for the baby as wont be able to work for two months wire answer at once.

"Naoma."

From this telegram a young woman employed in the office of the telegraph company deduced the erroneous conclusion that the appellee was a married man. On March 26, 1931, about two months after receipt and delivery of the telegram this employee, for reasons which do not appear in the record except by inference, decided to inform a young woman who was a close and intimate friend of appellee's fiancée that the appellee was a married man, and did so, and told her that she intended to inform the fiancée, and requested the friend not to do so. The next day, March 27th, the friend brought the fiancée to the office of the telegraph company, whereupon the employee asked her if she knew that the appellee was married. The fiancée replied no. The telegram was not read or repeated in substance except that it was stated the telegram was about him sending money for his baby, or the matter would be put in the hands of the court; that it was signed Mrs. Naoma Aldridge, and that it was from his wife. The fiancée testified that at the time the employee stated to her that the appellee was married to Naoma Aldridge she knew that he was divorced and that he had a baby. She further testified that upon learning of the telegram she at once went to the appellee and broke off her engagement, telling him she did not want to be engaged to be married to a married man, and that he denied he was married. The fact that the divorced wife of the appellee was seeking support from the appellee for the maintenance of their child could hardly have been a matter of surprise to appellee's fiancée, if, as she testified, she knew he was divorced and had a child. She was in a position to correct the erroneous impression of the employee of the telegraph company. Instead, she testified that she got angry with the appellee and broke the engagement because he had deceived her into believing he was a single man.

In this connection, it should be observed that in the complaint for damages which was verified by the appellee on May 19, 1931, it was alleged that his fiancée had no knowledge of the fact that he had a divorced wife in the state of Wyoming, but the complaint was amended to strike out this allegation, and both the appellee and his fiancée testified, as above stated, that she knew of the divorce, having been informed thereof at the time of the engagement. The employee of the telegraph company was promptly discharged and her testimony was not available at the trial. Her motive can only be inferred from the testimony of others. It is difficult to escape the impression that her motive was to warn a friend against becoming too far involved with a married man who was evidently paying court to her. It is not contended that the employee knew of the engagement. The appellee necessarily claims in support of the judgment for punitive damages that her disclosure of the contents of the telegram was inspired by malice towards the appellee. No reason is suggested why she should wish to injure the appellee. On the other hand, it is clear that she desired to protect her friend. However, we are not concerned with her motives, whether evil or good, unless the telegraph company is responsible therefor. The evidence is undisputed that when the young lady who disclosed the contents of the telegram was employed by the telegraph company she was informed of her duty to maintain inviolate the contents of telegraphic messages; that her duties about the office were purely clerical; that these duties did not require her to be familiar with the contents of telegrams, although her presence in the office made it possible for her to be cognizant thereof, and that immediately upon receiving information that she had violated her duty to the company and its patrons she was discharged. Upon this statement of the evidence the appellant contends that the telegraph company is not liable for punitive damages for the malice of the employee, if any, and relies upon the decision of the Su-

preme Court of the United States in Lake Shore & Michigan Southern Railway Co. v. Prentice, 147 U. S. 101, 13 S. Ct. 261, 263, 37 L. Ed. 97, in support of its claims. It was there held that:

"A principal, * * * though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent. * * *

"We do not see how such damages can be allowed, where the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him particeps criminis of his agent's act. No man should be punished for that of which he is not guilty."

It is also held in that case that the question of imposition of punitive damages is not a question of local law, but of general jurisprudence, upon which the federal courts, in the absence of express statute regulating the subject, "will exercise [their] own judgment, uncontrolled by the decisions of the courts of the several states." Furthermore, in the case of interstate messages, it is held in Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 S. Ct. 11, 65 L. Ed. 104, that the federal rule would be applicable in fixing the measure of damages, citing Southern Express Co. v. Byers, 240 U. S. 612, 36 S. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197, to the same effect. The rule announced in Lake Shore, etc., Ry. Co. v. Prentice, supra, was followed by this court in Pacific Packing & Navigation Co. v. Fielding, 136 F. 577, and by the Supreme Court of the state of California (the state in which the disclosure occurred) in Trabing v. California Navigation, etc., Co., 121 Cal. 137, 53 P. 644; Lightner Mining Co. v. Lane, 161 Cal. 689, 120 P. 771, Ann. Cas. 1913C, 1093. The rule was specifically applied by the Supreme Court of Wisconsin to the case of a disclosure of the contents of a telegram where the jury had allowed punitive damages of $3,000, in Marlatt v. Western Union Telegraph Co., 167 Wis. 176, 167 N. W. 263, 265. The court there said: "The action was against the corporation, not against the agent. No matter how willful may be the act of the agent, the corporation, in the absence of a direction on its part to do the act in the manner in which it is done, is not liable to punitory damages, unless it appears that it ratified the conduct of its employee." See, also, Cocke v.

Western Union Telegraph Co., 84 Miss. 380, 36 So. 392.

The appellee relies upon decisions from Alabama, Kansas, Minnesota, and Pennsylvania as sustaining the proposition that the telegraph company is liable in exemplary damages for the wrongful act of its agent, irrespective of any express authorization or subsequent ratification, citing: Western Union Tel. Co. v. Crowley, 158 Ala. 583, 48 So. 381; Western Union Tel. Co. v. Seed, 115 Ala. 670, 22 So. 474; Western Union Tel. Co. v. Gilstrap, 77 Kan. 191, 94 P. 122; Peterson v. Western Union Tel. Co., 75 Minn. 368, 77 N. W. 985, 43 L. R. A. 581, 74 Am. St. Rep. 502; Lake Shore Southern Ry. v. Rosenzweig, 113 Pa. 519, 6 A. 545.

These decisions are in acknowledged conflict with the decisions of the Supreme Court and are not applicable in a case where the federal rule is controlling.

The appellee suggests, rather than argues, that if we follow the decision of the Supreme Court there is a basis in the evidence for holding that there was negligence on the part of the employer in hiring or retaining the employee who made the disclosure such as would justify the imposition of punitive damages under that rule; because, in this case, unrestricted opportunity was given to the unskilled employee to divulge the contents of incoming messages. The appellee cites in support of this doctrine 62 Corpus Juris 268, which deals with negligence "in employing an agent of known incompetence or recklessness." There is no evidence that the employee who disclosed the message in this case was known by the telegraph company to be either incompetent or reckless.

The judgment for punitive damages cannot be sustained.

The appellee requests that in the event the decision is unfavorable to him upon the question of exemplary damages that the case be remanded for a new trial upon all issues. In the absence of error, and of cross-appeal on the subject of compensatory damages, and in view of the complete failure of the evidence to establish the right to exemplary damages, we cannot accede to this request. The claim for recovery of exemplary damages is sued on as a second and separate count and was treated as such throughout the trial of the case. The jury returned a separate verdict thereon. While this practice was unusual it so far segregated the question of exemplary damages from that of com-

pensatory damages as to have required the district judge to have granted the motion of the appellant for a directed verdict upon that subject. Failure to do so was error.

The judgment will be modified by striking out the item of punitive damages; and, so modified, is affirmed.