McGEHEE et al. v. McCARLEY.

(Circuit Court of Appeals, Fifth Circuit. January 10, 1899.)

No. 763.

1. ADMINISTRATOR—VALIDITY OF APPOINTMENT—COLLATERAL ATTACK.
    The validity of the appointment of an administrator, made by a court of general probate jurisdiction, cannot be questioned collaterally in an action brought by such administrator to recover for the tortious killing of his decedent, it not appearing but that a judgment in the action would render the matters involved res judicata.

2. CARRIERS—ACTION FOR KILLING OF CHILD—SUFFICIENCY OF EVIDENCE.
    Proof that a station agent of a railroad company made an assault on a woman waiting in the station for a train at night, by reason of which the woman's child, seven years old, became frightened and ran out on the tracks, and was run over and killed by a train, is sufficient to warrant a recovery against the company for the death of the child.

3. EXEMPLARY DAMAGES—LIABILITY OF MASTER FOR TORT OF SERVANT.
    Exemplary damages are not recoverable from a railroad company for the killing of a child, resulting from a willful and wanton assault committed by an employé, which was not authorized or ratified by the company.[1]

Writ of Error to the Circuit Court of the United States for the Northern District of Alabama.

Zuma Allred, a child seven years of age, having been run over and killed at Belle Mina, Ala., by a train of the Memphis & Charleston Railroad Company, Andrew J. McCarley was appointed administrator of her estate by the probate court of Blount county, Ala. As administrator, he then brought suit in the circuit court of Morgan county, Ala., against the receivers of the Memphis & Charleston Railroad Company, for $10,000 damages for the alleged tortious killing of the decedent. The suit was removed by the defendant receivers to the United States circuit court for the Northern district of Alabama. As stated by the counsel for the defendant in error in their brief, the complaint presents three theories as to the cause of the child's death: "(1) That the depot agent for about half an hour before the arrival of train tried to induce the child's mother to have carnal intercourse with him, which she refused to do; and he finally caught hold of her and caused her to scream, which awakened and frightened the child, and caused her to run out on the tracks. (2) That there was a negligent failure to provide lights at the depot whereby the child or her mother could have seen the tracks. (3) That the engineer while coming into the station negligently failed to keep a proper lookout, which would have discovered the child on the track in time for him to have stopped his train before reaching her." The defendants below pleaded the general issue, as also, specially, contributory negligence on the part of both the child and her mother, and that McCarley's appointment as

---

[1] As to injuries caused by negligence or torts of servants of carriers, see note to Railway Co. v. Williams, 10 C. C. A. 466; and, supplemental thereto, note to Mulvana v. The Anchoria, 27 C. C. A. 651.

the child's administrator was invalid, because the child left no asset except the right of action for her death, which asset, it was alleged, did not give the probate court jurisdiction to appoint an administrator. The substance of the testimony given on the trial by Mrs. Allred, the mother of the child, is as follows: On December 1, 1893, she started from Oneonta, Ala., for Texas, with her five children, the oldest of whom was nine years old, and the youngest an infant in arms. They went by way of Birmingham, Ala., and thence to Decatur, Ala., over the Louisville & Nashville Railroad. At Decatur they changed cars to the Memphis & Charleston Railroad. They had through tickets to Texas. Instead of taking the west-bound train at Decatur, they took the east-bound train at about 4 p. m. A railroad agent at Decatur told Mrs. Allred to take the latter train. The conductor of the east-bound train, on discovering that she was on the wrong train, told her to stop at Belle Mina, a station on the Memphis & Charleston Railroad six miles from Decatur, so that she could go back to Decatur. She got off at Belle Mina with her children about sundown. The depot agent at Belle Mina told her to go into the depot and wait. She did so. There was a platform around the depot. There was a lantern in the waiting room, but no light on the platform or tracks. It was a dark night. The agent said that the west-bound train would come about midnight. He stayed in his office for about an hour after Mrs. Allred arrived. He then went away, having given her a key to lock the door of the waiting room on the inside. The children went to sleep. About 30 minutes before the time when the west-bound train was due, the agent returned to the depot; and, Mrs. Allred having unlocked the door at his request, he entered the waiting room. After some conversation, he solicited her to go into an adjoining room to have sexual intercourse with him. She refused. He continued his solicitation, and finally seized her by the arm. She screamed, and the children awoke. The little girl, Zuma, ran out of the waiting room, down the platform steps, and on the track, close by, where she was killed by the west-bound train, which was just arriving. The depot agent testified, and denied the assault. He stated that there was a light in the waiting room, and that his impression was that a light was shining out of the bay window; that his impression was that his lantern was on the platform, and that the light allowed the track to be seen without difficulty. A witness testified that he was in bed in a room adjoining the waiting room at the time of the alleged assault, and did not hear any outcry from Mrs. Allred. The engineer and fireman of the train that killed the child testified, in substance, that everything was done to stop the train in time to save the child. There was evidence pro and con as to whether a small fund of $1.25 was made up for Mrs. Allred at Belle Mina before the accident. The baggage master at Decatur testified that he did not direct Mrs. Allred to take the east-bound train. Several witnesses testified that the depot agent at Belle Mina bore a good character.

There are 44 specifications of error in the record. They relate to and complain of the following matters: The overruling of demurrers to the complaint. The sustaining of motions to strike out pleas. The overruling of the objection to the entire transcript of proceedings in the probate court appointing McCarley as administrator. The overruling of objections to certain questions to and answers by Mrs. Allred and another witness. The refusal of the court to direct a verdict for defendants below. The refusal to charge that, even if the alleged assault is proven, it was not the proximate cause of the injury. The refusal to charge that McCarley is not administrator, and not entitled to recover any damages for the death of the child. The refusal to charge that only compensatory, and not punitive, damages are recoverable. The refusal to charge that, if the jury believe the evidence, their verdict must be for the defendants below. The refusal to charge that, even if there were no lights at the depot or the platform, yet, if the jury believed that this was not the cause of the decedent's stepping on the track, and that she could have seen the track by the aid of the headlight, the failure to have lights at the depot would not be a negligence of which she could complain. The refusal to charge that, in considering whether the mother or the child knew the location of the tracks, the jury might consider the fact that both arrived at Belle Mina before dark, and stayed in the immediate vicinity of the track until midnight. The refusal to charge that, if the

mother was negligent in allowing the child to get upon the track, the plaintiff below cannot recover. The refusal to charge that the action is not for damages resulting from the assault, but for the death of the child, and unless the jury is satisfied that the assault was the proximate cause of the child's death, and that the death could not have occurred but for the assault, the plaintiff below cannot recover under the first count. The refusal to charge that even if an employé of the defendants did misdirect Mrs. Allred, at Decatur, to take the east-bound train, the misdirection was not the proximate cause of the death. The refusal to charge that if the jury believe that the approach of the train was the cause of the decedent's death, and that in such frightened condition she stepped or ran on the track in front of the train, and so close thereto that the trainmen could not have avoided the injury, then the plaintiff below cannot recover in this cause. The refusal to charge that: "The good character of the depot agent is admissible in this cause as tending to prove the falsity of the charge of assault upon the mother of said Zuma Allred; and I charge you that it may be sufficient, if proved to your satisfaction to be good, to generate a doubt in your mind as to whether said assault was committed, and if, from the evidence of his good character, you have a doubt or uncertainty as to whether he committed said alleged assault, then you must find that said assault was not committed; and in this event, if you believe from the evidence that the said child ran upon the track of said railroad in such close proximity to the train as that the use of all preventive effort could not have averted the injury, then your verdict must be for the defendants." The refusal to charge that, if the jury believed the evidence, their verdict must be for the defendants below on each of the first, third, and fourth counts of the complaint. (The second count of the complaint had been stricken out by amendment.) The refusal to grant a new trial. The trial resulted in a verdict and judgment in favor of the plaintiff below for $2,625, from which judgment the receivers have taken their writ of error to this court.

Milton Humes, for plaintiffs in error.

Henry Kirk White, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PAR-LANGE, District Judge.

PARLANGE, District Judge (after stating the facts as above). It appears to us that the gravamen of the complaint of the plaintiffs in error consists of the alleged invalidity of the appointment of the administrator who brought this suit, the refusal of the trial court to direct a verdict against the plaintiff below, the refusal to give a special charge concerning the good character of the depot agent charged with the assault upon the mother of the decedent, and the refusal to restrict the jury to compensatory damages. As to the first three of those matters, we are of opinion that the lower court did not err.

The appointment of the administrator should not have been inquired into collaterally in this case. The court which appointed him had general probate jurisdiction. It has not been shown that a final determination in this cause, as between McCarley, suing as administrator, and the plaintiffs in error, would not be res judicata, and a complete protection against another suit for the same cause of action. This protection is all the interest which the plaintiffs in error have in the point.

The lower court did not err in refusing to direct a verdict in favor of the defendants below. If it be true that the depot agent, by making an assault upon the mother of the child, so terrified the child that she ran out upon the track, and that there, because of her fright and the circumstances then surrounding her, she was run over and killed

by the train, we see no reason why the plaintiff below should not recover. Again, the alleged failure to provide proper and sufficient lights, whether the same be considered as an independent cause for recovery, or as a circumstance in the matter of the assault upon the mother, and the consequent fright and bewilderment of the child, was also a question for the jury. We therefore conclude that a direction to the jury to find for the defendants below would have been improper and erroneous.

It is clear that the special charge concerning the good character of the depot agent was properly refused. The defendants below had the full benefit of that evidence. It seems to have been admitted and heard without objection, and the judge charged the jury that the character of the depot agent was conceded to be good. Even if it were true, as contended on behalf of the plaintiffs in error, that the character of the depot agent was admissible in this case, it would not follow that the special charge should have been given. This charge required proof of the assault beyond a reasonable doubt. It went even beyond this, and required the jury to find against the plaintiff below on the question of the assault, if the character evidence generated in the minds of the jury any doubt or uncertainty.

But a majority of this court finds material error in this cause, resulting from the failure of the trial court to charge the jury, as the defendants below requested, that only compensatory, and not punitive, damages were recoverable in the case. It is plain to us that under the doctrine of Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, no punitive damages could be recovered in this case. It is not claimed that the corporation ever authorized or ratified the alleged negligence or assault. While the corporation may be compelled to make compensation for the tortious act of its servant committed in the scope of his employment, even if the act be willful and wanton, yet, if the corporation be itself innocent, it cannot be punished by the infliction of vindictive damages. See circuit court of appeals, Seventh circuit, in Railway Co. v. Russ, 6 C. C. A. 597, 57 Fed. 822. We find nothing in the statute law of Alabama which would require a departure from the doctrine announced in Railway Co. v. Prentice, supra. On the contrary, we find that the supreme court of Alabama, in construing the very statute under which this action was brought (Code Ala. 1886, § 2588), said that the damages recoverable under that statute are compensatory, and not punitive. Williams v. Railroad Co., 91 Ala. 635, 9 South. 77. We are clear that the judgment must be reversed because of the error above stated. It is ordered that the judgment of the lower court be reversed, and that this cause be remanded to that court, with the direction to grant a new trial.