### McGHEE et al. v. McCARLEY.

#### (Circuit Court of Appeals, Fifth Circuit. May 22, 1900.)

#### No. 763.

WRONGFUL DEATH—PUNITIVE DAMAGES—ALABAMA STATUTE.

Under the statutes of Alabama (Code, §§ 26, 27), the personal representative of a deceased minor child, in an action against the receivers of a railroad to recover for the death of his intestate through the wrongful act or negligence of defendants, or their servants, may recover punitive damages.

Pardee, Circuit Judge, dissenting.

On Rehearing.

Milton Humes and Paul Speake, for plaintiff in error.

H. K. White, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge. This cause was fully stated when it was first passed upon by this court. See 91 Fed. 462. An application for rehearing having been made by the defendant in error, and the same having been granted, the cause has been fully reargued, and the court has again carefully considered it. The single error heretofore found by this court in the cause was that the trial court refused to charge the jury that only compensatory, and not punitive, damages were recoverable in the cause. On the first hearing of this cause the argument and the briefs treated very imperfectly, and in an unintentionally misleading manner, the matter of the statute law upon which this cause was based. Assisted by the argument and briefs on the rehearing, the court has carefully re-examined the point upon which it ordered this cause to be remanded, and has concluded that the statute law of Alabama permits a personal representative to recover punitive damages in such a cause as the one at bar, and that therefore it is not within the doctrine of Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. See, specially, Tiff. Death Wrongful Act, §§ 130, 154; also, Id. § 35. The court has also re-examined the other questions involved in this cause, and finds no error in the cause. It is therefore ordered that the former order of this court, reversing the judgment of the lower court and remanding this cause for a new trial, be, and the same is hereby, annulled and set aside. It is further ordered that the judgment of the lower court be, and the same is hereby, affirmed.

PARDEE, Circuit Judge (dissenting). When this case was first presented in this court, it was represented by counsel, and argued and considered, as an action brought under section 26 of the Code of Alabama, which is as follows:

"26 (2588). Suits for Injuries Causing Death of Minor Child. When the death of a minor child is caused by the wrongful act, or omission, or negli-

gence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in the cases mentioned in the preceding section, or the personal representative of such minor, may sue and recover such damages as the jury may assess; but a suit by the father or mother, in such case, is a bar to a suit by the personal representative."

Under that statute the court held, following the decision of the supreme court of Alabama in Williams v. Railroad Co., 91 Ala. 635, 9 South. 77, and Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, that no exemplary or punitive damages could be recovered, and reversed the judgment of the circuit court because the trial judge had refused to charge the jury to that effect. See McGehee v. McCarley, 33 C. C. A. 629, 91 Fed. 462. After this decision was rendered, counsel discovered that the suit was not brought under section 26, but under section 27, of the Code of Alabama, which is as follows:

"27 (2589) (2641, 2642, 2643) (2299, 2300) (1940, 1941). Action for Wrongful Act, Omission, or Negligence Causing Death. A personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death; such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for such wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distribution. Such action must be brought within two years from and after the death of the testator or intestate,"

—and which section the supreme court of Alabama has construed as allowing punitive damages. Accepting this change of front, this court granted a rehearing, and directed argument upon all the points involved in the case, and now reverses the former ruling, and directs that the judgment of the circuit court be affirmed. From this judgment I am compelled to dissent, on several grounds.

The complaint in the case contains four counts, the first of which is as follows:

"The plaintiff claims of the defendants ten thousand ($10,000) dollars as damages, for that heretofore, to wit, on December 1, 1893, the defendants were operating a line of railroad from the city of Memphis, in the state of Tennessee, to the town of Stevenson, in the state of Alabama, which said line of railroad ran through, and was operated by the defendants in, the counties of Morgan and Limestone, in the state of Alabama, and on said December 1, 1893, the mother of plaintiff's intestate purchased transportation for herself and four minor children (among them, plaintiff's intestate, who was a minor child about seven years old) from Decatur, Ala., to some point in Texas unknown to plaintiff, over the line of railroad operated by defendants from Decatur to Memphis, and on said date said mother of plaintiff's intestate and said intestate, Zuma Allred, were misdirected by the agent of defendants at Decatur, Ala., as to the train they should take, and they boarded the passenger train, operated by defendants, going east. At Belle Mina, in Limestone county, Ala., they were put off said train by the conductor thereof, to await the arrival of the west-bound train on said road. Said passenger train was due going west at about 12 o'clock at night. The plaintiff's intestate, Zuma Allred, and her mother, with three other minor children, the oldest of whom was nine years of age, and the youngest a nursing baby, remained in the wait-

ing room at defendants' depot at Belle Mina for the arrival of said west-bound train for several hours. Said night of December 1, 1893, was dark, and the platform around the waiting room was dark; there being no lights furnished by defendants on the platform, or on the railroad track beside it. Shortly before the arrival of the west-bound train, the depot agent in the employ of the defendants at Belle Mina came into said waiting room with a lantern on his arm, and commenced talking to the mother of plaintiff's intestate, and soon tried to induce her to go into an adjoining room with him; and, upon her refusal to do so, laid hands upon her for the purpose of inducing or compelling her to go into said room. This conduct on the part of said agent of defendants frightened the mother of plaintiff's intestate, who was alone with her four small children, and wholly unprotected, whereat she screamed, and tried to make her escape from said depot waiting room out onto the platform. Said four children had been sleeping, and were awakened by the screams of their mother, and, in their fright, ran out of the waiting room with their mother. It was dark on the outside of the waiting room, and plaintiff's intestate, Zuma Allred, ran out of said room and across the platform, and down onto the tracks of defendants' railroad, and was run over, cut bodily in two, and killed by a passenger train going west on said road. Plaintiff avers that his intestate, Zuma Allred, was run over and killed by said train by reason of the unlawful and wrongful conduct and assault by said agent of defendants, whose name is unknown to plaintiff, upon the mother of plaintiff's intestate, which assault was committed while he was at said depot as the agent of defendants, charged by law with the duty of protecting plaintiff's intestate and her mother from all assaults, and even indecent or offensive words, on the part of any person whatsoever. The said assault by the agent of defendants caused the mother to scream or cry out and awaken the child, Zuma Allred, who, in her dazed and startled condition, due to the sudden fright caused by said agent's assault on her mother, ran out of the said waiting room, across the platform, and down onto the tracks of railroad, where in the darkness she was run over, cut bodily in two, and killed by a passenger train going west on said road. The plaintiff's intestate was a little child, and incapable of acting with the judgment and discretion of a person of older and maturer years."

The second count charges negligence of the station agent at Belle Mina in not assisting Mrs. Allred and her children, whereby, etc.; the third count charges negligence of the defendants in not providing the proper lights at the station and on the tracks at Belle Mina; and the fourth count charges negligence of the engineer of the train, in that he did not keep a proper lookout, so as to enable him to stop the train in time, whereby, etc. In my opinion, the evidence in the case wholly failed to sustain the third and fourth counts, and the trial court erred in refusing to charge the jury that, if they believed the evidence, their verdict must be for the defendants under the third and fourth counts.

The thirty-first, thirty-second, and thirty-seventh assignments of error are as follows:

"(31) The court erred in refusing to give special written charge No. 25 requested by defendants, viz.: 'Under the evidence in this case, A. J. McCarley is not, and was not when this suit was brought, the administrator of Zuma Allred, deceased, and is not entitled to recover any damages for the death of said Zuma Allred.' (32) The court erred in refusing special written charge No. 27 requested by the defendants, viz.: 'Where the father or mother or personal representative of a deceased child sues to recover damages for an alleged wrong or negligence causing the death of such child, the damages recoverable, if any, are compensatory, and not punitive, and are solely for the benefit of the parents, to compensate them for the loss of the services of the child.' " "(37) The court erred in refusing to give special written charge No. 12, requested by defendants, viz.: 'This is not an action for damages or injury to Mrs. All-

red by reason of the alleged assault of the depot agent, but is, under the Alabama law, for the death of the child, Zuma; and unless you are satisfied from the evidence that said alleged assault was the proximate cause of the death of the child, and that its death could not have occurred but for said assault, the plaintiff cannot recover under the first count of the complaint.'"

The questions made by these assignments of error are properly raised in the record, and, in my opinion, they are well taken. In this opinion, however, I do not care to discuss any of them except the thirty-second, which relates to punitive damages. The defendant receivers are not charged, either in pleading or proof, with any personal misconduct or with any personal responsibility in respect to the matters complained of, but, as receivers, are to be held responsible for the wrongful acts of their inferior servants and agents. Any punishment, therefore, inflicted upon the defendants by way of damages, will be vicarious in what may be called the second degree, in that the amount recovered will be made a charge—First, upon the receivers; and, second, upon the owners of the Memphis & Charleston Railroad Company, who are innocent of all management and control of the property. As there was no evidence to support the second and third counts of the complaint, the receivers in this case cannot be held liable for any wrongful act or omission of their servants or employés in directly managing and operating the railroad property in their possession. If the receivers are at all liable for the killing of Zuma Allred, it must be because at the time and under the circumstances the receivers, as such, were under obligation to protect her from the wrongful assault and unlawful conduct of persons who were in their employment and service. Mrs. Allred and her children were, by implication, at least, passengers over the lines operated by the defendants, and who had regularly contracted for their passage. The liability of the receivers, therefore, must be deduced from, and be founded upon, the contract of carriage of passengers for hire, and the implied obligations resulting therefrom, to the effect that the carrier must protect the passenger from assault, indignity, insult, and abuse, especially on the part of the agents, employés, and servants of the carrier. In relation to the carrier's contract and the obligation resulting, the supreme court of the United States, in Railway Co. v. Prentice, supra, has declared:

"This question, like all others affecting the liability of a corporation as a common carrier of goods or passengers, is a question, not of local law, but of general jurisdiction in which this court, in the absence of an express statute regulating the subject, will exercise its own judgment, uncontrolled by the decisions of courts of the several states."

And the same case is distinct, direct, and positive authority that, in the absence of an express statute, punitive damages cannot be allowed against a railway corporation for the negligence and wrongful conduct of its inferior servants and employés.

If there is any express statute of the state of Alabama which authorizes punitive damages against a common carrier of passengers, not itself in fault, for the negligent acts of its agents and servants, it has not been pointed out. It is claimed that section 27, which authorizes a verdict for such damages as the jury may assess, is an express statute on the subject; but this has not been the view of the supreme court of Alabama, if I read its decisions intelligently. Since the original en-

actment of the statute in 1872, and from 58 Ala. down to 112 Ala., lately issued, the right to the recovery of punitive damages under this statute has been contested, and in no case has it been held that the statute expressly allowed them. While it may be true that the construction of the statute has uniformly been that exemplary damages may be allowed thereunder, the right to them has been deduced from the alleged intent of the law as deduced from its original title. I can do no better than quote from Railroad Co. v. Freeman, 97 Ala. 292, 294, 11 South. 801:

"The statute referred to as originally enacted February 5, 1872, was construed by this court in the cases of Railroad Co. v. Shearer, 58 Ala. 672, and Railroad Co. v. Sullivan, 59 Ala. 272, in respect to the measure of damages recoverable under it. In the former of these cases it was said: 'Lacerated feelings of surviving relatives, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of February 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposed to accomplish by such pecuniary mulct as the jury "deem just." The damages are punitive, and they are none the less so in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad "to prevent homicide." ' Railroad Co. v. Shearer, supra. And in the latter case the court, after restating with approval the substance of what was said in Shearer's Case, and quoted above, proceeds: 'It [the act of February 5, 1872] is punitive in its purposes,—punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; "to prevent homicide." * * * The damages, 'tis true, go to the estate of the party slain, and, in effect, are compensatory: but this does not change the great purpose of the statute,—"to prevent homicide." Preservation of life —prevention of its destruction by the wrongful act or omission of another— is the subject of the statute, and all its provisions are but machinery for carrying it into effect.' Railroad Co. v. Sullivan, supra. Neither of these cases involved facts which, aside from the purely punitive character of the statute as construed in them, would have authorized the imposition of exemplary damages as the law in that regard has been declared by this court. Railway Co. v. Lee, 92 Ala. 262, 9 South. 230. That the court did not reach its conclusion as to the nature of the damages recoverable from any conviction that the defendants were guilty of such gross negligence, as that term has come to be understood in our books, as amounted to willfulness, wantonness, or the like, is, we think, clear on the language employed. The conception of a recovery of damages as a pecuniary mulct—a punishment of the wrongdoer as a retribution for the wrong and deterrant of its repetition—is the leading, indeed the sole, idea upon which the conclusion was reached. Compensation is referred to only as a fortuitous result of the imposition of the punishment,—a thing which ensued, not because of any intent of the lawmakers that it should ensue, and not because a predicate for it was necessary to the assessment of damages, or exerted any influence in the determining the amount of the verdict, but only because, the damages having been assessed alone upon a consideration of the culpability of the defendant's act or omission, wholly regardless of the actual loss or injury suffered thereby, they constituted a fund which the statute distributed to the next of kin of the deceased; and this whether or not his next of kin would have been at all benefited by his continued life, or were to any extent damnified by his untimely death. That this was the view actuating the court to the conclusion in Shearer's and Sullivan's Cases is further demonstrated by the language of the judge who wrote the opinions in those cases in the subsequent case of Railroad Co. v. King, 81 Ala. 177, 183, 2 South. 152. * * * The damages recoverable being punitive and exemplary in all cases under the statute,—punitive of the act done, and intended by their imposition to stand as an example to deter others from the commissions of mortal wrongs, or to incite to diligence in the avoidance of fatal casualties,—the purpose being the preservation of human life, regardless of the pecuniary value of a particular life to next of kin under statutes of distribution, the

admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act or in the omission to act as required by the dictates of care and prudence, and without any reference to, or consideration of the loss or injury, the act or omission may occasion to the living. Such is the construction given by this court to the act 'to prevent homicide,' and, as thus construed, it is manifest that the charge set out above is a sound exposition of the elements and measure of damages recoverable under the act, unless there has been such modification of the statute, in its recent codification, as necessitates a different interpretation, or unless the act as thus construed is violative of the organic law, as counsel insist. Has the statute been changed in the respect under consideration since the decision in the Shearer and Sullivan Cases? We think not. It has not in the present Code the title which it bore as an original enactment,— 'to prevent homicide.' But in the codification of statutes it is usual to omit their titles, and such omissions have never been supposed to alter their meaning. Moreover this title was omitted from the Code of 1876, and the statute without it, and considered only as a section of codified laws with an index headline, was, as we have seen, given the same interpretation as has been put upon it when its purpose was blazoned in its caption. Railroad Co. v. King, supra. And, if the title served in this first instance to fix the intent of the lawmakers, it is a fair presumption that this intent follows the statute in all subsequent codifications, so long as the words employed by the legislature to effectuate that intent are not materially changed."

This does not read as though the court was construing an express statute authorizing the allowance of punitive damages against employers not themselves in fault, and for the negligent acts of inferior employés in carrying out the express and implied obligations of the common carrier's contract. The words "such damages as the jury may assess" ought not to be held as expressly allowing punitive damages, because, it is not the fair import of the words, particularly in a statute providing for a remedy to be given in a court of law, where well-defined rules and usages ought to be applied. The very same words ("such damages as the jury may assess") are used in section 26, supra, and under that statute punitive damages are not allowed against an innocent employer for the negligent acts of his inferior servants. See Williams v. Railroad Co., supra. The difference in construction in the matter of damages of section 26, supra, and section 27, supra, is justified by the fact that section 26 was originally enacted for the purpose, in part, at least, of taking the negligent killing of minors out of the common-law rule as expressed in the maxim, "Actio personalis moritur cum persona," and to permit a survival of the cause of action where a minor was killed through negligence; and section 27 was enacted in aid of the criminal laws of the state, "to prevent homicide," in line with oriental methods to prevent crime by putting to death all the relatives of a criminal,—the idea evidently being, as to section 27, that, rather than see his corporation employer suffer, the careless employé will reform himself.

There is another feature as to damages in this case which is worthy of consideration. The defendants are receivers and mere stakeholders, acting under orders of court. They are themselves without blame, and cannot be held personally responsible, even to further the legislative intent imputed to section 27 of the Code of Alabama. Any smart money they are compelled to pay because of the alleged wrongful conduct of one of their inferior servants must be paid out of a trust fund in the hands of the court, belonging to parties from whom the court

has taken away the administration of their own property. The court seems to occupy the controlling position in relation to the management of the railroad which is usually ascribed to the more or less much-abused corporation. In Railroad Co. v. Lansford (recently decided) 102 Fed. 62, this court approved an instruction to the jury to the effect that, under section 27 of the Code of Alabama, if the jury found the corporation negligent (of course, through its servants), it was the duty of the jury to impose such damages, by way of punishment, as would, in their judgment, prevent all railroad corporations from being guilty of negligence which would cause the death of their passengers. I indulge in the hope that such a rule may not be applied to the courts and their receivers in operating railroad property. Under the circumstances of this case, the allowance of punitive damages can have no good or wholesome effect. Calling damages herein "punitive damages" is but giving another name to what is in reality a donation to lawyers and a solatium to relatives. While there is no answer or plea in this case to the effect that the defendants, as "court receivers," are not within the purview and intention of said section 27, Code Ala., on which this case is said to be based, yet it seems that a very grave question arises, as to whether the said section does apply to receivers, who are officers of the court, and mere stakeholders of property in the possession of the court,—at least, so far as the section is penal in its purpose, and permits the assessment of punitive damages. The section, in terms, provides a remedy for the "wrongful act, omission or negligence of any person or persons, or corporations, his or their servants or agents, whereby the death," etc. Court receivers are not expressly mentioned in this statute, and it may well be that, in omitting to expressly include them, the legislature intended to leave them subject to the control and direction of the court whose officers they are. A very interesting case in support of this view is U. S. v. Harris (recently decided; not yet reported) 20 Sup. Ct. 609, Adv. S. U. S. 609, 44 L. Ed. ——, wherein it was held that receivers were not liable for penalties imposed by the statutes of the United States for not watering live stock in transit. In Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262, it is well said:

"A receiver is an officer of the court that appoints him, through whom the law takes possession of the property to which the receivership relates; and in cases of receiverships of railway property, under the orders of the court appointing them, receivers often operate railways, and assume the duties, burdens, and liabilities ordinarily imposed by law upon common carriers, in addition to the ordinary duties attaching to the position: but at all times they are only the agencies of the court, subject to its orders, and having no personal interest in the property in their hands resulting from the existence of the receivership, though responsible officially for the proper management and custody of property confided to their care, and, as other persons, personally responsible for their own unlawful acts working injury to others, but not so responsible for the negligent or wrongful acts of servants that they may be compelled to employ in the business confided by the court to their management and control." Page 224, 83 Tex., page 579, 18 S. W., and page 264, 15 L. R. A.