# LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY *v.* PRENTICE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 58. Argued November 23, 1892. — Decided January 3, 1893.

A railroad corporation is not liable to exemplary or punitive damages for an illegal, wanton and oppressive arrest of a passenger by the conductor of one of its trains, which it has in no way authorized or ratified.

THIS was an action of trespass on the case, brought October 19, 1886, in the Circuit Court of the United States for the Northern District of Illinois, by Prentice, a citizen of Ohio,

against the Lake Shore and Michigan Southern Railway Company, a corporation of Illinois, to recover damages for the wrongful acts of the defendant's servants.

The declaration alleged, and the evidence introduced at the trial tended to prove, the following facts: The plaintiff was a physician. The defendant was engaged in operating a railroad, and conducting the business of a common carrier of passengers and freight, through Ohio, Indiana, Illinois and other States. On October 12, 1886, the plaintiff, his wife and a number of other persons were passengers, holding excursion tickets, on a regular passenger train of the defendant's railroad, from Norwalk in Ohio to Chicago in Illinois. During the journey the plaintiff purchased of several passengers their return tickets, which had nothing on them to show that they were not transferable. The conductor of the train, learning this, and knowing that the plaintiff had been guilty of no offence for which he was liable to arrest, telegraphed for a police officer, an employé of the defendant, who boarded the train as it approached Chicago. The conductor thereupon, in a loud and angry voice, pointed out the plaintiff to the officer, and ordered his arrest; and the officer, by direction of the conductor, and without any warrant or authority of law, seized the plaintiff and rudely searched him for weapons in the presence of the other passengers, hurried him into another car, and there sat down by him as a watch, and refused to tell him the cause of his arrest, or to let him speak to his wife. While the plaintiff was being removed into the other car, the conductor, for the purpose of disgracing and humiliating him with his fellow-passengers, openly declared that he was under arrest, and sneeringly said to the plaintiff's wife, "Where's your doctor now?" On arrival at Chicago, the conductor refused to let the plaintiff assist his wife with her parcels in leaving the train, or to give her the check for their trunk; and, in the presence of the passengers and others, ordered him to be taken to the station-house, and he was forcibly taken there; and detained until the conductor arrived and, knowing that the plaintiff had been guilty of no offence, entered a false charge against him of disorderly conduct, upon which he gave bail and was

released, and of which, on appearing before a justice of the peace for trial on the next day, and no one appearing to prosecute him, he was finally discharged.

The declaration alleged that all these acts were done by the defendant's agents in the line of their employment, and that the defendant was legally responsible therefor; and that the plaintiff had been thereby put to expense, and greatly injured in mind, body and reputation.

At the trial, and before the introduction of any evidence, the defendant, by its counsel, admitted "that the arrest of the plaintiff was wrongful, and that he was entitled to recover actual damages therefor;" but afterwards excepted to each of the following instructions given by the Circuit Judge to the jury:

"If you believe the statements which have been made by the plaintiff and the witnesses who testified in his behalf (and they are not denied) then he is entitled to a verdict which will fully compensate him for the injuries which he sustained, and in compensating him you are authorized to go beyond the amount that he has actually expended in employing counsel; you may go beyond the actual outlay in money which he has made. He was arrested publicly, without a warrant, and without cause; and if such conduct as has been detailed before you occurred, such as the remark that was addressed by the conductor to the wife in the plaintiff's presence, in compensating him you have a right to consider the humiliation of feeling to which he was thus publicly subjected. If the company, without reason, by its unlawful and oppressive act, subjected him to this public humiliation, and thereby outraged his feelings, he is entitled to compensation for that injury and mental anguish.

"I am not able to give you any rule by which you can determine that; but bear in mind, it is strictly on the line of compensation. The plaintiff is entitled to compensation in money for humiliation of feeling and spirit, as well as the actual outlay which he has made in and about this suit.

"And, further, after agreeing upon the amount which will fairly compensate the plaintiff for his outlay and injured feel-

ings, you may add something by way of punitive damages against the defendant, which is sometimes called smart money, if you are satisfied that the conductor's conduct was illegal (and it was illegal), wanton and oppressive. How much that shall be the court cannot tell you. You must act as reasonable men, and not indulge vindictive feelings towards the defendant.

" If a public corporation, like an individual, acts oppressively, wantonly, abuses power, and a citizen in that way is injured, the citizen, in addition to strict compensation, may have, the law says, something in the way of smart money; something as punishment for the oppressive use of power."

The jury returned a verdict for the plaintiff in the sum of $10,000. The defendant moved for a new trial, for error in law, and for excessive damages. The plaintiff thereupon, by leave of court, remitted the sum of $4000, and asked that judgment be entered for $6000. The court then denied the motion for a new trial, and gave judgment for the plaintiff for $6000. The defendant sued out this writ of error.

*Mr. George C. Greene* for plaintiff in error.

*Mr. W. A. Foster* for defendant in error.

I. But one question arises upon the record, and that is, under the facts, is plaintiff in error liable for punitive damages?

That a master is liable for the trespass of his servant in the line of his employment, although wilful on the part of the servant, we assume is no longer an open question under the decisions in this country and in England.

That the liability of corporations for the acts of servants is the same as that of natural persons, may be conceded, and has received the sanction of this court in *National Bank* v. *Graham*, 100 U. S. 699, 702; and in *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597. See also *Salt Lake City* v. *Hollister*, 118 U. S. 256, 260; *New Jersey Steamboat Company* v. *Brockett*, 121 U. S. 637; *State* v. *Morris & Essex Railroad*, 3 Zabriskie, (23 N. J. Law,) 360.

II. Authority by the principal is implied when the servant is acting within the scope of his employment. It is not necessary to show express authority by the corporation. Was the act done in the interest of the company? This is the only question. *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597.

III. Punitive damages were properly allowed in the case at bar. The authorities cited by counsel for plaintiff in error denying punitive damages are either distinguishable from the case at bar upon the facts, or are from exceptional States that have adopted a different rule of damages from the great majority of courts, and from the rule adopted by this court. See *Craker* v. *Chicago & Northwestern Railway*, 36 Wisconsin, 657; *Milwaukee & St. Paul Railway* v. *Arms*, 91 U. S. 489; *Galena* v. *Hot Springs Railroad*, 13 Fed. Rep. 116.

The plaintiff was a passenger without a question as to his right to be carried and protected from insult or indignity. There was no question with reference to his ticket, he had violated no rule of the company, was guilty of no crime, nor had he demeaned himself in any improper manner, nor was he in any way obnoxious to his fellow-passengers. The treatment that he received was worse than that bestowed upon the ordinary felon. He was publicly pointed out, and a command for his arrest given in tones which called attention to him from all occupants of the car. He was searched for weapons publicly, as if he were a desperado. He was pushed through cars like a thief, separated from his wife, as if to prevent a conspiracy to escape, guarded like a murderer and carried to the station in the rain without leave to obtain his overcoat, as one who had forfeited all right to considerations of humanity.

IV. These acts of the conductor were within the scope of his employment. *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117; *Howe* v. *Newmarch*, 12 Allen, 49; *Limpus* v. *London General Omnibus Co.*, 1 H. & C. 526; *Seymour* v. *Greenwood*, 6 H. & N. 359; *Garretsen* v. *Duenckel*, 50 Missouri, 104; *Campbell* v. *Pullman Palace Car Co.*, 42 Fed. Rep. 484; *Chamberlain* v. *Chandler*, 3 Mason, 242; *Craker* v. *Chicago & Northwestern Railway*, 36 Wisconsin, 657;

*Denver & Rio Grande Railway* · v. *Harris,* 122 U. S. 597;
*Milwaukee & St. Paul Railway* v. *Arms,* 91 U. S. 489; *Krule-
vitz* v. *Eastern Railroad,* 140 Mass. 573.

MR. JUSTICE GRAY, after stating the case as above, delivered
the opinion of the court.

. The only exceptions taken to the instructions at the trial,
which have been argued in this court, are to those on the sub-
ject of punitive damages.

. The single question presented for our decision, therefore, is
whether a railroad corporation can be charged with punitive
or exemplary damages for the illegal, wanton and oppres-
sive conduct of a conductor of one of its trains towards a
passenger.

This question, like others affecting the liability of a railroad
corporation as a common carrier of goods or passengers —
such as its right to contract for exemption from responsibility
for its own negligence, or its liability beyond its own line, or
its liability to one of its servants for the act of another person
in its employment — is a question, not of local law, but of gen-
eral jurisprudence, upon which this court, in the absence of
express statute regulating the subject, will exercise its own
judgment, uncontrolled by the decisions of the courts of the
several States. *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 368;
*Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 443;
*Myrick* v. *Michigan Central Railroad,* 107 U. S. 102, 109;
*Hough* v. *Railway Co.,* 100 U. S. 213, 226.

.. The most distinct suggestion of the doctrine of exemplary
or punitive damages in England before the American Revolu-
tion is to be found in the remarks of Chief Justice Pratt
(afterwards Lord Camden) in one of the actions against the
King's messengers for trespass and imprisonment under gen-
eral warrants of the Secretary of State, in which, the plaintiff's
counsel having asserted, and the defendant's counsel having
denied, the right to recover " exemplary damages," the Chief
Justice instructed the jury as follows: " I have formerly deliv-
ered it as my opinion on another occasion, and I still continue

of the same mind, that a jury have it in their power to give damages for more than the injury received. Damages are designed not only as a satisfaction to the injured person, but likewise as a punishment to the guilty, to deter from any such proceeding for the future, and as a proof of the detestation of the jury to the action itself." *Wilkes* v. *Wood*, Lofft, 1, 18, 19; *S. C.* 19 Howell's State Trials, 1153, 1167. See also *Huckle* v. *Money*, 2 Wilson, 205, 207; *S. C.*, Sayer on Damages, 218, 221. The recovery of damages, beyond compensation for the injury received, by way of punishing the guilty, and as an example to deter others from offending in like manner, is here clearly recognized.

In this court, the doctrine is well settled, that in actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive or vindictive damages, sometimes called smart money, if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages. *The Amiable Nancy*, 3 Wheat. 546, 558, 559; *Day* v. *Woodworth*, 13 How. 363, 371; *Philadelphia &c. Railroad* v. *Quigley*, 21 How. 202, 213, 214; *Milwaukee & St. Paul Railway* v. *Arms*, 91 U. S. 489, 493, 495; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, 521; *Barry* v. *Edmunds*, 116 U. S. 550, 562, 563; *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597, 609, 610; *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26, 36.

Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offence. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent. This is clearly shown by the

judgment of this court in the case of *The Amiable Nancy*, 3 Wheat. 546.

In that case, upon a libel in admiralty by the owner, master, supercargo and crew of a neutral vessel against the owners of an American privateer, for illegally and wantonly seizing and plundering the neutral vessel and maltreating her officers and crew, Mr. Justice Story, speaking for the court, in 1818, laid down the general rule as to the liability for exemplary or vindictive damages by way of punishment, as follows: " Upon the facts disclosed in the evidence this must be pronounced a case of gross and wanton outrage, without any just provocation or excuse. Under such circumstances, the honor of the country and the duty of the court equally require that a just compensation should be made to the unoffending neutrals, for all the injuries and losses actually sustained by them. And if this were a suit against the original wrongdoers, it might be proper to go yet farther, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of the privateer, upon whom the law has, from motives of policy, devolved a responsibility for the conduct of the officers and crew employed by them, and yet, from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in cases of loss. They are innocent of the demerit of this transaction, having neither directed it, nor countenanced it, nor participated in it in the slightest degree. Under such circumstances, we are of the opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they are not bound to the extent of vindictive damages." 3 Wheat. 558, 559.

The rule thus laid down is not peculiar to courts of admiralty; for, as stated by the same eminent judge two years later, those courts proceed, in cases of tort, upon the same principles as courts of common law, in allowing exemplary damages, as well as damages by way of compensation or remuneration for expenses incurred, or injuries or losses sustained, by the misconduct of the other party. *Boston Manuf. Co.* v. *Fiske,* 2

Mason, 119, 121. In *Keene* v. *Lizardi*, 8 Louisiana, 26, 33, Judge Martin said : " It is true, juries sometimes very properly give what is called smart money. They are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct. But this is only justifiable in an action against the wrongdoer, and not against persons who, on account of their relation to the offender, are only consequentially liable for his acts, as the principal is responsible for the acts of his factor or agent." To the same effect are: *The State Rights*, Crabbe, 22, 47, 48 ; *The Golden Gate*, McAllister, 104 ; *Wardrobe* v. *California Stage Co.*, 7 California, 118 ; *Boulard* v. *Calhoun*, 13 La. Ann. 445 ; *Detroit Post* v. *McArthur*, 16 Michigan, 447 ; *Grund* v. *Van Vleck*, 69 Illinois, 478, 481 ; *Becker* v. *Dupree*, 75 Illinois, 167 ; *Rosenkrans* v. *Barker*, 115 Illinois, 331 ; *Kirksey* v. *Jones*, 7 Alabama, 622, 629 ; *Pollock* v. *Gantt*, 69 Alabama, 373, 379 ; *Eviston* v. *Cramer*, 57 Wisconsin, 570 ; *Haines* v. *Schultz*, 21 Vroom, (50 N. J. Law,) 481 ; *McCarty* v. *De Armit*, 99 Penn. St. 63, 72 ; *Clark* v. *Newsam*, 1 Exch. 131, 140 ; *Clissold* v. *Machell*, 26 Upper Canada Q. B. 422.

The rule has the same application to corporations as to individuals. This court has often, in cases of this class, as well as in other cases, affirmed the doctrine that for acts done by the agents of a corporation, in the course of its business and of their employment, the corporation is responsible, in the same manner and to the same extent, as an individual is responsible under similar circumstances. *Philadelphia &c. Railroad* v. *Quigley*, 21 How. 202, 210 ; *National Bank* v. *Graham*, 100 U. S. 699, 702 ; *Salt Lake City* v. *Hollister*, 118 U. S. 256, 261 ; *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597, 608.

A corporation is doubtless liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly, or against the express orders of the principal. *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468 ; *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637 ; *Howe* v. *Newmarch*, 12 Allen, 49 ; *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117. A corporation may even be held liable

for a libel, or a malicious prosecution, by its agent within the scope of his employment; and the malice necessary to support either action, if proved in the agent, may be imputed to the corporation. *Philadelphia &c. Railroad* v. *Quigley*, 21 How. 202, 211; *Salt Lake City* v. *Hollister*, 118 U. S. 256, 262; *Reed* v. *Home Savings Bank*, 130 Mass. 443, 445, and cases cited; *Krulevitz* v. *Eastern Railroad*, 140 Mass. 573; *Mc-Dermott* v. *Evening Journal*, 14 Vroom, (43 N. J. Law,) 488, and 15 Vroom, (44 N. J. Law,) 430; *Bank of New South Wales* v. *Owston*, 4 App. Cas. 270. But, as well observed by Mr. Justice Field, now Chief Justice of Massachusetts: "The logical difficulty of imputing the actual malice or fraud of an agent to his principal is perhaps less when the principal is a person than when it is a corporation; still the foundation of the imputation is not that it is inferred that the principal actually participated in the malice or fraud, but, the act having been done for his benefit by his agent acting within the scope of his employment in his business, it is just that he should be held responsible for it in damages." *Lothrop* v. *Adams*, 133 Mass. 471, 480, 481.

Though the principal is liable to make compensation for a libel published or a malicious prosecution instituted by his agent, he is not liable to be punished by exemplary damages for an intent in which he did not participate. In *Detroit Post* v. *McArthur*, in *Eviston* v. *Cramer*, and in *Haines* v. *Schultz*, above cited, it was held that the publisher of a newspaper, when sued for a libel published therein by one of his reporters without his knowledge, was liable for compensatory damages only, and not for punitive damages, unless he approved or ratified the publication; and in *Haines* v. *Schultz* the Supreme Court of New Jersey said of punitive damages: "The right to award them rests primarily upon the single ground — wrongful motive." "It is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite." "Absence of all proof bearing on the essential question, to wit, defendant's motive — cannot be permitted to take the place of evidence, without leading to a most dangerous extension of the doctrine *respon-*

*deat superior.*" 21 Vroom, (50 N. J. Law,) 484, 485. Whether a principal can be criminally prosecuted for a libel published by his agent without his participation is a question on which the authorities are not agreed; and where it has been held that he can, it is admitted to be an anomaly in the criminal law. *Commonwealth* v. *Morgan,* 107 Mass. 199, 203; *Regina* v. *Holbrook,* 3 Q. B. D. 60, 63, 64, 70, and 4 Q. B. D. 42, 51, 60.

No doubt, a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent, necessary to warrant the imposition of such damages, is brought home to the corporation. *Philadelphia &c. Railroad* v. *Quigley,* *Milwaukee & St. Paul Railway* v. *Arms,* and *Denver & Rio Grande Railway* v. *Harris,* above cited; *Caldwell* v. *New Jersey Steamboat Co.,* 47 N. Y. 282; *Bell* v. *Midland Railway,* 10 C. B. (N. S.) 287; *S. C.* 4 Law Times (N. S.) 293.

Independently of this, in the case of a corporation, as of an individual, if any wantonness or mischief on the part of the agent, acting within the scope of his employment, causes additional injury to the plaintiff in body or mind, the principal is, of course, liable to make compensation for the whole injury suffered. *Kennon* v. *Gilmer,* 131 U. S. 22; *Meagher* v. *Driscoll,* 99 Mass. 281, 285; *Smith* v. *Holcomb,* 99 Mass. 552; *Hawes* v. *Knowles,* 114 Mass. 518; *Campbell* v. *Pullman Car Co.,* 42 Fed. Rep. 484.

In the case at bar, the defendant's counsel having admitted in open court " that the arrest of the plaintiff was wrongful, and that he was entitled to recover actual damages therefor," the jury were rightly instructed that he was entitled to a verdict which would fully compensate him for the injuries sustained, and that in compensating him the jury were authorized to go beyond his outlay in and about this suit, and to consider the humiliation and outrage to which he had been subjected by arresting him publicly without warrant and without cause, and by the conduct of the conductor, such as his remark to the plaintiff's wife.

But the court, going beyond this, distinctly instructed the

jury that "after agreeing upon the amount which will fully compensate the plaintiff for his outlay and injured feelings," they might "add something by way of punitive damages against the defendant, which is sometimes called smart money," if they were "satisfied that the conductor's conduct was illegal, wanton and oppressive."

The jury were thus told, in the plainest terms, that the corporation was responsible in punitive damages for wantonness and oppression on the part of the conductor, although not actually participated in by the corporation. This ruling appears to us to be inconsistent with the principles above stated, unsupported by any decision of this court, and opposed to the preponderance of well considered precedents.

In *Philadelphia & Reading Railroad* v. *Derby*, which was an action by a passenger against a railroad corporation for a personal injury suffered through the negligence of its servants, the jury were instructed that "the damages, if any were recoverable, are to be confined to the direct and immediate consequences of the injury sustained;" and no exception was taken to this instruction. 14 How. 470, 471.

In *Philadelphia &c. Railroad* v. *Quigley*, which was an action against a railroad corporation for a libel published by its agents, the jury returned a verdict for the plaintiff under an instruction that "they are not restricted in giving damages to the actual positive injury sustained by the plaintiff, but may give such exemplary damages, if any, as in their opinion are called for and justified, in view of all the circumstances in this case, to render reparation to the plaintiff, and act as an adequate punishment to the defendant." This court set aside the verdict, because the instruction given to the jury did not accurately define the measure of the defendant's liability; and, speaking by Mr. Justice Campbell, stated the rules applicable to the case in these words : "For acts done by the agents of the corporation, either *in contractu* or *in delicto*, in the course of its business and of their employment, the corporation is responsible, as an individual is responsible under similar circumstances." "Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of

contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or criminal indifference to civil obligations. Nothing of this kind can be imputed to these defendants." 21 How. 210, 213, 214.

In *Milwaukee & St. Paul Railway* v. *Arms*, which was an action against a railroad corporation, by a passenger injured in a collision caused by the negligence of the servants of the corporation, the jury were instructed thus : "If you find that the accident was caused by the gross negligence of the defendant's servants controlling the train, you may give to the plaintiff punitive or exemplary damages." This court, speaking by Mr. Justice Davis, and approving and applying the rule of exemplary damages, as stated in *Quigley's case*, held that this was a misdirection, and that the failure of the employés to use the care that was required to avoid the accident, " whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this, there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Nothing of this kind can be imputed to the persons in charge of the train; and the court, therefore, misdirected the jury." 91 U. S. 495.

In *Denver & Rio Grande Railway* v. *Harris*, the railroad company, as the record showed, by an armed force of several hundred men, acting as its agents and employés, and organized and commanded by its vice-president and assistant general manager, attacked with deadly weapons the agents and employés of another company in possession of a railroad, and forcibly drove them out, and in so doing fired upon and injured one of them, who thereupon brought an action against the corporation, and recovered a verdict and judgment under an instruction that the jury " were not limited to compensatory damages, but could give punitive or exemplary damages, if it

was found that the defendant acted with bad intent, and in pursuance of an unlawful purpose to forcibly take possession of the railway occupied by the other company, and in so doing shot the plaintiff." This court, speaking by Mr. Justice Harlan, quoted and approved the rules laid down in *Quigley's case,* and affirmed the judgment, not because any evil intent on the part of the agents of the defendant corporation could of itself make the corporation responsible for exemplary or punitive damages, but upon the single ground that the evidence clearly showed that the corporation, by its governing officers, participated in and directed all that was planned and done. 122 U. S. 610.

The president and general manager, or, in his absence, the vice-president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it, that any wanton, malicious or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself. But the conductor of a train, or other subordinate agent or servant of a railroad corporation, occupies a very different position, and is no more identified with his principal, so as to affect the latter with his own unlawful and criminal intent, than any agent or servant standing in a corresponding relation to natural persons carrying on a manufactory, a mine, or a house of trade or commerce.

The law applicable to this case has been found nowhere better stated than by Mr. Justice Brayton, afterwards Chief Justice of Rhode Island, in the earliest reported case of the kind, in which a passenger sued a railroad corporation for his wrongful expulsion from a train by the conductor, and recovered a verdict, but excepted to an instruction to the jury that "punitive or vindictive damages, or smart money, were not to be allowed as against the principal, unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it, either before or after it was committed." This instruction was held to be right, for the following reasons: "In cases where puni-

tive or exemplary damages have been assessed, it has been done upon evidence of such wilfulness, recklessness or wickedness, on the part of the party at fault, as amounted to criminality, which for the good of society and warning to the individual ought to be punished. If in such cases, or in any case of a civil nature, it is the policy of the law to visit upon the offender such exemplary damages as will operate as punishment and teach the lesson of caution to prevent a repetition of criminality, yet we do not see how such damages can be allowed, where the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of his agent's act. No man should be punished for that of which he is not guilty." "Where the proof does not implicate the principal, and, however wicked the servant may have been, the principal neither expressly nor impliedly authorizes or ratifies the act, and the criminality of it is as much against him as against any other member of society, we think it is quite enough, that he shall be liable in compensatory damages, for the injury sustained in consequence of the wrongful act of a person acting as his servant." *Hagan* v. *Providence & Worcester Railroad*, 3 Rhode Island, 88, 91.

The like view was expressed by the Court of Appeals of New York, in an action brought against a railroad corporation by a passenger for injuries suffered by the neglect of a switchman, who was intoxicated at the time of the accident. It was held that evidence that the switchman was a man of intemperate habits, which was known to the agent of the company, having the power to employ and discharge him and other subordinates, was competent to support a claim for exemplary damages; but that a direction to the jury in general terms that in awarding damages they might add to full compensation for the injury "such sum for exemplary damages as the case calls for, depending in a great measure of course upon the conduct of the defendant," entitled the defendant to a new trial; and Chief Justice Church, delivering the unanimous judgment of the court, stated the rule as follows: " For injuries by the negligence of a servant while engaged in the business of the mas-

ter, within the scope of his employment, the latter is liable for compensatory damages; but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized or ratified, or that the master employed or retained the servant, knowing that he was incompetent, or, from bad habits, unfit for the position he occupied. Something more than ordinary negligence is requisite; it must be reckless and of a criminal nature, and clearly established. Corporations may incur this liability as well as private persons. If a railroad company, for instance, knowingly and wantonly employs a drunken engineer or switchman, or retains one after knowledge of his habits is clearly brought home to the company, or to a superintending agent authorized to employ and discharge him, and injury occurs by reason of such habits, the company may and ought to be amenable to the severest rule of damages; but I am not aware of any principle which permits a jury to award exemplary damages in a case which does not come up to this standard, or to graduate the amount of such damages by their views of the propriety of the conduct of the defendant, unless such conduct is of the character before specified." *Cleghorn* v. *New York Central Railroad,* 56 N. Y. 44, 47, 48.

Similar decisions, denying upon like grounds the liability of railroad companies and other corporations, sought to be charged with punitive damages for the wanton or oppressive acts of their agents or servants, not participated in or ratified by the corporation, have been made by the courts of New Jersey, Pennsylvania, Delaware, Michigan, Wisconsin, California, Louisiana, Alabama, Texas and West Virginia.

It must be admitted that there is a wide divergence in the decisions of the state courts upon this question, and that corporations have been held liable for such damages under similar circumstances in New Hampshire, in Maine, and in many of the Western and Southern States. But of the three leading cases on that side of the question, *Hopkins* v. *Atlantic & St. Lawrence Railroad,* 36 N. H. 9, can hardly be reconciled

with the later decisions in *Fay* v. *Parker*, 53 N. H. 342, and *Bixby* v. *Dunlap*, 56 N. H. 456; and in *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202, 228, and *Atlantic & Great Western Railway* v. *Dunn*, 19 Ohio St. 162, 590, there were strong dissenting opinions. In many, if not most, of the other cases, either corporations were put upon different grounds in this respect from other principals, or else the distinction between imputing to the corporation such wrongful act and intent as would render it liable to make compensation to the person injured, and imputing to the corporation the intent necessary to be established in order to subject it to exemplary damages by way of punishment, was overlooked or disregarded.

Most of the cases on both sides of the question, not specifically cited above, are collected in 1 Sedgwick on Damages, (8th ed.) § 380.

In the case at bar, the plaintiff does not appear to have contended at the trial, or to have introduced any evidence tending to show, that the conductor was known to the defendant to be an unsuitable person in any respect, or that the defendant in any way participated in, approved or ratified his treatment of the plaintiff; nor did the instructions given to the jury require them to be satisfied of any such fact before awarding punitive damages. But the only fact which they were required to find, in order to support a claim for punitive damages against the corporation, was that the conductor's illegal conduct was wanton and oppressive. For this error, as we cannot know how much of the verdict was intended by the jury as a compensation for the plaintiff's injury, and how much by way of punishing the corporation for an intent in which it had no part, the

*Judgment must be reversed, and the case remanded to the Circuit Court, with directions to set aside the verdict, and to order a new trial.*

MR. JUSTICE FIELD, MR. JUSTICE HARLAN and MR. JUSTICE LAMAR took no part in this decision.