PACIFIC PACKING & NAVIGATION CO. v. FIELDING.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,050.

1. TRIAL—INSTRUCTIONS AS TO BURDEN OF PROOF—AFFIRMATIVE DEFENSE.

In an action by a member of the crew of a vessel against the owners to recover damages for his unlawful imprisonment by the master, where the answer alleged as a special defense that plaintiff had become mentally deranged, rendering his confinement necessary and proper, it was not error to instruct the jury that the burden of proving such defense rested on defendant; nor was such instruction inconsistent with the general charge that plaintiff had the burden of proving that his restraint was unlawful, malicious, and without probable cause.

2. SHIPPING—LIABILITY OF OWNER FOR TORTS OF MASTER—EXEMPLARY DAMAGES.

A corporation owner of a vessel cannot be subjected to punitive damages because of the unlawful, oppressive, and malicious action of the master in imprisoning a member of the crew while at sea, which action was not authorized nor ratified by the corporation.

In Error to the District Court of the United States for the Northern Division of the District of Washington.

Gorham, Brown & Gorham, for plaintiff in error.

McCafferty & Kane and O. Jacobs, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the defendant in error to recover damages against the plaintiff in error, a corporation and owner of the steamship Valencia, on which the defendant in error was employed as purser, and of which ship one James McRae Lane was master, on a voyage from Nome, Alaska, to Seattle, Wash., in the fall of 1901. The complaint contained two counts, one of which was held insufficient by the court below, and is not now for consideration. The other charged that while the ship was at sea the defendant in error was imprisoned by the captain of the ship, who in so doing acted maliciously and without reasonable or probable cause, to the plaintiff's damage. The answer of the plaintiff in error, defendant to the action, put in issue the averments of malice and want of reasonable or probable cause on the part of the master, and, among other things, alleged as a separate and affirmative defense that on the

18th day of October, 1901, the·ship left Nome with cargo and pas-sengers for Seattle, and that on or about the 21st day of October thereafter, while the ship was upon her voyage, and upon the high seas between Dutch Harbor, Alaska, and Seattle, the plaintiff—

"Became and was ill, and incapacitated by such illness from attending to his duties as such purser, and at the same time became and was deranged and affected in his mind, and his brain was disordered to such an extent· that, if said plaintiff had been permitted to be at large and have the liberty of said vessel during the remainder of the said voyage, there was great danger and probability that he, said plaintiff, by reason of said illness and his said de-ranged and disordered condition of mind, would inflict great harm and injury upon himself and take his own life; that the said Lane, master of the said vessel as aforesaid, to prevent the infliction upon himself by plaintiff of such injuries, and the taking of his life by himself while so ill and in such de-ranged and disordered condition of mind and brain, and for no other reason, confined said plaintiff to his room on said vessel and caused the same to be guarded; and that·the said illness of said plaintiff, and his said deranged and disordered condition of mind, continued until the arrival of said vessel at Seattle, on or about the 30th day of October, 1902, whereupon plaintiff was re-leased from his said restraint and left said vessel."

There are but two questions presented on the present appeal that we deem it necessary to consider, one of which grows out of the fact that the court below instructed the jury that the burden of proving, by a fair preponderance of evidence, the justification for the imprison-ment of the plaintiff, so affirmatively pleaded, rested upon the defend-ant, and that, unless such particular justification was so proved, the jury should find that specific defense "against the defendant; in other words, find it not proven." The court had already instructed the jury that the burden was on the plaintiff to show by a preponderance of the evidence:

"First, that he was restrained of his liberty by the defendant, or by its officers or agents acting by its authority; second, that such restraint was unlawful; third, that it was imposed upon him maliciously; and fourth, that it was without probable cause"—

and that, if the plaintiff failed to so prove any one of those facts, he could not recover, and the verdict should be for the defendant.

It is insisted on the part of the plaintiff in error that these instruc-tions were inconsistent and misleading. It is conceded that the court below properly instructed the jury that the master of a vessel at sea has the power to imprison a member of the crew in the exercise of the authority he necessarily has, in order to provide for the safety of the vessel and the protection of those on board, but that such authority cannot be abused by exercising it with malice, or without reasonable or probable cause, without rendering both the master and the owner of the vessel liable in damages for ·such abuse. We are of the opinion that the inconsistency contended for on the part of the ·plaintiff in ·error does not exist, and that the instructions given by the court below in respect to the burden of proof were not misleading, and were cor-rect.

But the court below instructed the jury that, if they should find in favor of the plaintiff, they had—

"The right, if the facts seemed to them to justify it, to award as damages something in addition to actual compensation, as smart money—something to

compensate him for the humiliation and annoyance of being imprisoned, and as a penalty upon the wrongdoer for having inflicted a personal indignity of that kind."

As the alleged wrongful act, for which the plaintiff was awarded $5,000 damages by the jury, consisted in the master's confining him in his stateroom on board the ship, this instruction, if erroneous, may have caused very substantial injury to the plaintiff in error. Whether or not it was erroneous presents a very important question. There is much conflict in the decisions of the courts of the various states in respect to the liability of a corporation in punitive damages for the wanton or oppressive conduct of its officers or agents, done without its consent or ratification.

In the present case the bill of exceptions states, among other things, that no evidence was given tending to show that the defendant corporation ever authorized the master to commit any of the acts complained of, or ever in any manner ratified them. In Lake Shore, etc., Railway Company v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, the Supreme Court had before it a very aggravated case of the illegal, wanton, and oppressive arrest of a passenger by the conductor of a railway train. In that case, as in this, the wrongful acts were in no way authorized or ratified by the defendant corporation. The Supreme Court there referred to the conflict of authority in the various states upon the question, and held that, inasmuch as it is one of general jurisprudence, the federal courts, in the absence of an express statute regulating the subject, must exercise their own judgment, uncontrolled by the decisions of the courts of the several states, and, after giving the case very careful consideration, came to the conclusion that, for such wrongful acts of a conductor of one of its trains, not authorized or ratified, a railroad company is not liable to exemplary or punitive damages. In the course of its opinion the court said:

"Exemplary or punitive damages being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent. This is clearly shown by the judgment of this court in the case of The Amiable Nancy, 3 Wheat. 546, 4 L. Ed. 456."

That was a libel in admiralty by the owner, master, supercargo, and crew of a neutral vessel against the owners of an American privateer, for illegally and wantonly seizing and plundering the neutral vessel and maltreating her officers and crew; and the court, in disposing of that case, speaking through Mr. Justice Story, said:

"Upon the facts disclosed in the evidence, this must be pronounced a case of gross and wanton outrage, without any just provocation or excuse. Under such circumstances, the honor of the country and the duty of the court equally require that a just compensation should be made to the unoffending neutrals for all the injuries and losses actually sustained by them. And if this were a suit against the original wrongdoers, it might be proper to go yet farther, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of the privateer, upon whom the law

has, from motives of policy, devolved a responsibility for the conduct of the officers and crew employed by them, and yet, from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in cases of loss. They are innocent of the demerit of this transaction, having neither directed it, nor countenanced it, nor participated in it in the slightest degree. Under such circumstances, we are of the opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libelants, but they are not bound to the extent of vindictive damages."

The Supreme Court, in the case of Lake Shore, etc., Railway Company v. Prentice, supra, also quoted with approval the language of Judge Martin, in Keene v. Lizardi, 8 La. 26, 33:

"It is true, juries sometimes very properly give what is called 'smart money.' They are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct. But this is only justifiable in an action against the wrongdoer, and not against persons who, on account of their relation to the offender, are only consequentially liable for his acts, as the principal is responsible for the acts of his factor or agent"—

adding, also, a large number of other decisions to the same effect.

The case of Denver & Rio Grande Railway Company v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146, was also referred to by the court in Lake Shore, etc., Railway Company v. Prentice, supra, where a railroad corporation was held liable in punitive damages for the acts of its agents and employés upon a record which showed that the company, by an armed force of several hundred men, acting as its agents and employés, and organized and commanded by its vice president and assistant general manager, attacked with deadly weapons the agents and employés of another company in possession of a railroad, and forcibly drove them out, and in so doing fired upon and injured one of them, who was held not limited to compensatory damages, but might recover punitive damages also, "not," as said by the court in Lake Shore, etc., Railway Company v. Prentice, "because any evil intent on the part of the agents of the defendant corporation could of itself make the corporation responsible for exemplary or punitive damages, but upon the single ground that the evidence clearly showed that the corporation, by its governing officers, participated in and directed all that was planned and done"; the court adding, in Lake Shore, etc., Railway Company v. Prentice:

"The president and general manager, or, in his absence, the vice president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it that any wanton, malicious, or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself."

It is contended that this principle is applicable to the master of a ship at sea, who is for the time being in the sole and absolute command of the ship and of everybody in it; but we do not feel justified in so extending it, especially in view of the decision of the Supreme Court in the case of The Amiable Nancy, 3 Wheat. 546, 4 L. Ed. 456, the doctrine of which case was expressly approved in Lake Shore, etc., Railway Company v. Prentice, supra.

We are of the opinion that, upon the facts here appearing, the plaintiff in error is not liable in punitive damages for the acts of the master complained of, for which reason the judgment must be, and hereby is, reversed, and the cause remanded for a new trial.