of the case was pertinent, and left the jury at liberty to take such fact into consideration in arriving at their verdict.

Plaintiff's counsel now urges that the rulings could have done no harm, because it already appeared in evidence that the defendant had large plants in different localities, which turned out large products. Such facts are not necessarily inconsistent with financial weakness, whereas the commonly accepted idea of a trust is that it is a combination of different corporations of great financial strength. There was no evidence that the defendant was a trust until the questions above set forth were propounded. We are unwilling to listen to the argument that such questions are harmless. If harmless, they should not be persisted in against the objection of the opposing party. Counsel pressing such questions must expect to derive some benefit therefrom, and the argument on appeal that no benefit was in fact derived is, to say the least, ungracious. We are disposed to assume that such questions, which are immaterial for any purpose, have the effect with the jury which was intended or desired when the questions were asked.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

### EAST v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1906.)

1. MASTER AND SERVANT—INJURIES TO THIRD PERSON—PUNITIVE DAMAGES.

    In an action against a master for a tort of his servant, punitive damages cannot be given for the malice of the servant.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1273.]

2. FALSE IMPRISONMENT—EVIDENCE.

    In an action against a railroad company for an arrest by its servant, evidence that he believed that the act of plaintiff in getting on a moving train was a misdemeanor was inadmissible on a cause of action for false imprisonment.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Imprisonment, §§ 101, 107.]

3. MALICIOUS PROSECUTION—EVIDENCE.

    In an action against a railroad company for illegal arrest by its servant, evidence that the servant believed that the act of plaintiff in getting on a moving train was a misdemeanor was admissible on a cause of action for malicious prosecution, malice being an essential ingredient of the cause of action itself.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, § 138.]

4. FALSE IMPRISONMENT—PLEADING—ISSUES—GENERAL DENIAL.

    On a charge against a railroad company for false imprisonment by its servant, a general denial was sufficient to authorize the admission of evidence that plaintiff got on the steps of a moving train on the wrong side and climbed over the platform gate into the car.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Imprisonment, § 97.]

5. SAME—ACTS CONSTITUTING—MISDEMEANOR JUSTIFYING ARREST—MALICIOUS PROSECUTION.

    Pen. Code, § 426, subd. 2, prohibiting persons from getting on any car while in motion for the purpose of obtaining transportation as a pas-

senger, though under the caption "Riding on Freight Trains," makes the attempt to get on a moving passenger train a misdemeanor, so that a railroad company whose servant arrested a person getting on a moving train was not guilty of false imprisonment or malicious prosecution.

Hooker and Rich, JJ., dissenting.

Appeal from Trial Term, Richmond County.

Action by John P. East against the Brooklyn Heights Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

I. R. Osland, for appellant.

Samuel H. Evins, for respondent.

GAYNOR, J. In an action for damages brought against a master for a tort of his servant under the rule of respondeat superior, punitive damages cannot be given against him for the malice of the servant. This rule is so well known among us, being applied every day by trial judges, that it may well seem that no citation of authority should be made for it, but a full discussion of the subject may be found in Lake Shore R. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97.

But in this case the jury were charged that they might give smart money damage against the defendant for the malice, wantonness or recklessness of its servant in arresting and prosecuting the plaintiff. It would seem that this must have come about through something said by the defendant's learned counsel during the course of the trial; and instead of excepting to the charge he requested the court to charge that the jury could not give punitive damages unless the servant acted from actual malice in making the arrest, trying to make a distinction between malice and actual malice.

Although the defendant is thus bound to this erroneous basis on which the case went to the jury, it has nevertheless to be pointed out, it seems to me, in order to pass on the exception of the defendant to the court's ruling sustaining the plaintiff's objection to the questions to the servant whether he made the arrest believing that the act of the plaintiff in getting on the moving train was prohibited and made a misdemeanor by subdivision 2 of section 426 of the Penal Code, and calling for his motive in making the arrest; for otherwise it might appear to be our view that evidence was material in disproof of malice as a basis for smart money damage, whereas there could be no such damage lawfully allowed in the case.

1. In the issue on the cause of action for false imprisonment, the objection was properly sustained. In such an action the motive of the person making the illegal arrest is wholly immaterial and irrelevant, except on the question of malice as a basis for smart money damage; and as the defendant could not be liable for smart money for the malice of the servant, the objection was properly sustained in respect of the false imprisonment issue.

2. In the issue for malicious prosecution, however, malice was an essential ingredient of the cause of action itself. The plaintiff could

not recover any damage for malicious prosecution without establishing malice (although smart money damage could not be given in addition for the servant's malice). The ruling was therefore erroneous, for the defendant had a right to give any evidence in that issue which would disprove malice.

3. The learned trial judge was also in error in limiting the testimony of the servant who made the arrest of what the plaintiff did which caused the arrest (viz., got on the steps of the moving train on the wrong side and climbed over the platform gate into the car), to the malicious prosecution issue, on the ground that no justification for the false arrest had been pleaded to the cause for false imprisonment. The general denial raised the whole issue of the arrest, the occurrence which caused it, the force or lack of force used, and so on, in the issue for false imprisonment as well as in the issue for malicious prosecution. These facts did not need to be pleaded as a defense. They do not constitute new matter at all, but are on the contrary embraced in the issue raised by the general denial. A general denial alone is the correct and scientific answer to a complaint for false imprisonment or for malicious prosecution, and raises the whole issue on the complaint.

4. I am also of opinion that the plaintiff was guilty of a misdemeanor by his act of getting on the moving train, and that the defendant's motion to dismiss the complaint as to both causes of action should therefore have been granted.

Chapter 261, p. 331, of the Laws of 1878 enacted that any one who shall "get on or off a freight car or engine while in motion, or who shall ride on any wood or freight car", unless employed by, or with permission of, the company, should be guilty of a misdemeanor. Chapter 474, p. 520, of the Laws of 1879 enacted that every person who shall "willfully obstruct, hinder or delay" the running of a car "upon any horse or street railroad" should be guilty of a misdemeanor.

These two laws were materially amended and re-enacted by section 426 of the Penal Code of 1881 with an additional clause added. The said section consists of three subdivisions. Subdivision 1 consists only of the second prohibition of the said act of 1878, viz., that against riding on freight cars; subdivision 2, instead of prohibiting the getting on or off of freight cars or freight engines in motion, as is the other prohibition of the said act of 1878, is comprehensively changed to prohibit the geting on (not off) "any car or train while in motion for the purpose of obtaining transportation thereon as a passenger." This is plainly meant to stop passengers from getting on moving cars, owing to the accidents resulting therefrom. The preceding subdivision prohibits riding on freight cars, it being directed against the stealing of rides on freight trains by tramps and the like. Subdivision 2 was not therefore directed against that abuse, but against the general abuse and danger of getting on cars in motion; not against getting on to steal rides, but to get "transportation thereon as a passenger." The phrase "as a passenger" has reference to passenger trains; there are no passengers on freight trains; one stealing a ride on a freight train is not a passenger. But it is enough, without refining, that the Legislature has carefully changed the prohibition of the act of 1878 against

getting "on or off" any freight car or freight engine, to getting "on any car or train." This is plain enough; but the addition, i. e., for the purpose of becoming a passenger, excludes doubt. This general and comprehensive change cannot be deprived of its meaning by the courts. We must take the statute as it is. The amendments were not meant for nothing.

The caption of the section of the Penal Code is "Riding on Freight Trains", it is true. But such captions can never be used to thwart or change the words of an enactment; they may be considered to determine the meaning where the words are equivocal or of uncertain meaning. In the present instance the caption is concededly false as to part of the section, viz., subdivision 3, which forbids any one to obstruct, hinder or delay any car on a steam, horse or street railway; the word "steam" being an addition to the said act of 1879, which in itself shows that the Legislature was making changes and additions of words for the purpose of changing the meaning. This word was brought in by amendment in 1890 (Laws 1890, p. 824, c. 458). That the caption is false as to subdivision 3 is enough to deprive it of any decisive weight as applied to subdivision 2. It certainly cannot be used to deprive the plain words of that subdivision of the meaning which the Legislature meant to convey by them in substituting them for the restricted words of the act of 1878.

Nor is the intention of the Legislature to make it a misdemeanor to get on moving trains to be deemed so improbable, on the ground that it would be an unreasonable interference with the conduct of people, as not to be attributed to it. It is by no means an unreasonable enactment; most people would deem it a wise one, intended to prevent many grievous accidents on railroads, and to allow of the immediate arrest as an example of those who try to get on moving trains. Whether this part of the statute contemplates street cars as well as trains of railroad cars does not need to be considered here.

The judgment should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event.

WOODWARD, J., concurs. JENKS, J., concurs on the ground that the plaintiff was guilty of a misdemeanor. HOOKER and RICH, JJ., dissent.