Frank W. KNISLEY, et al., Plaintiffs,

v.

NETWORK ASSOCIATES, INC.,
et al., Defendants.

No. C 99–1729 SBA.

United States District Court,
N.D. California.

Aug. 16, 1999.

**1112**

Alan Schulman, Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Roger W. Kirby, Randall K. Berger, Kirby McInerney & Squire LLP, New York, NY, Steven E. Cauley, Scott E. Poynter, Gina M. Cothern, Steven E. Cauley, P.A., Little Rock, AR, Reed R. Kathrein, William S. Lerach, John K. Grant, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Frank W. Knisley, Joel W. Harmon, Plaintiffs.

Kevin J. Yourman, James E. Tullman, Behram V. Pareky, Weiss & Yourman, Michael D. Braun, Stull Stull & Brody, Los Angeles, CA, for Network Institutional Group, Plaintiff.

Richard Zamora, Attorney at Law, El Paso, TX, pro se.

ARMSTRONG, District Judge.

This is a securities class action suit in which two groups of plaintiffs have filed motions for appointment of lead plaintiff and selection of lead counsel. One of those groups is Network Institutional Group ("NIG"), represented by the firm Weiss & Yourman. The other group is Network Associates Lead Plaintiff Group ("NALPG"), represented by Milberg, Weiss, Bershad, Hynes & Lerach, who bring the instant ex parte motion. NALPG's ex parte motion seeks an order permitting them to engage in expedited discovery related to whether the NIG is the most adequate plaintiff. Such discovery is permitted by 15 U.S.C. § 78u–4(a)(3)(B)(iv) if the plaintiff demonstrates "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." For the reasons set forth herein, the Court hereby DENIES NALPG's ex parte motion.

### DISCUSSION

**I. Allegations**

**A. Remuneration**

■ NALPG allege that Weiss & Yourman ("W & Y"), counsel for NIG, offered to pay brokers for the identities of clients who own shares of defendant Network Associates' stock for the purpose of assembling the plaintiff class for this lawsuit. It appears that W & Y sent letters to brokerage houses, along with notices regarding the class action, asking the brokerage houses to send the notices to their clients who purchased shares of Network Associates during the relevant time period. (See Gilardi Decl., Exs. A and B.) This allegedly is a violation of 15 U.S.C. § 78o(c)(8), which provides,

> No broker or dealer, or person associated with a broker or dealer, may solicit or accept, directly or indirectly, remuneration for assisting an attorney in obtaining the representation of any person in any private action arising under this chapter or under the Securities Act of 1933.

NIG responds that they did not provide "remuneration" to "brokers" or "dealers," and therefore did not violate § 78o(c)(8). Rather, they argue that they simply reim-

bursed brokerage houses for their label and mailing costs. (Opp'n at 8.) They argue that § 78o(c)(8) prohibits referral fees but not reimbursement.

NALPG responds that "remuneration" *includes* reimbursement. NALPG observes that the dictionary definition of "remuneration" encompasses both "compensation" and "reimbursement." Black's Law Dictionary defines remuneration as "Payment; reimbursement. Reward; recompense; salary; compensation." *Black's Law Dictionary* 1296 (6th ed.1990). Webster's Dictionary defines "remunerate" as follows: "1: to pay an equivalent for (as a service, loss, expense) 2: to pay an equivalent to (a person) for a service, loss or expense: Recompense, Compensate." *Webster's Third New International Dictionary*, (1961). NALPG also cites to cases that support a definition of "remuneration" that encompasses reimbursement. *See, e.g., Lake Shore & M.S.R. Co. v. Prentice*, 147 U.S. 101, 108, 13 S.Ct. 261, 37 L.Ed. 97 (1893); *Ballard v. Sullivan*, 905 F.2d 257, 259 (9th Cir.1990).

The particular provision of the PSLRA prohibiting "remuneration" has not been interpreted in any case law that the Court has been able to locate. Nonetheless, the court finds persuasive NALPG's argument that "remuneration" includes reimbursement. Section 78o(c)(8) is intended to discourage brokers from accepting fees from attorneys in return for helping the attorneys obtain clients. If remuneration were not to encompass reimbursement, brokers could easily circumvent § 78o(c)(8) by arranging their transactions with attorneys such that any compensation they receive is in the form of reimbursement for their costs in providing services to the attorneys.

■ However, § 78o(c)(8) only prohibits conduct by *brokers or dealers*. Specifically, it provides "no broker or dealer ... may solicit or accept ... remuneration for assisting an attorney in obtaining the rep-

resentation of any person in a securities lawsuit...." § 78o(c)(8). There is no prohibition in the provision regulating the conduct of attorneys. Therefore, even if W & Y provided remuneration to brokerage houses, the Court is not persuaded that W & Y have violated any provision of the securities laws in doing so.[1]

## B. *Solicitation*

■ NALPG also alleges that the actions of Weiss & Yourman violate rules of professional conduct regarding targeted solicitations. They argue that the notice letters that were sent are "solicitations," and therefore must comply with the rules of professional conduct, which require that attorney solicitations may only be sent to persons "known to be in need of legal services [and] shall include the words 'Advertising Material' on the outside of the envelope." *Model Rules of Professional Conduct* Rule 7.3 (1992).

W & Y dispute that they solicited any business. Rather, they argue that the letters they sent to brokers were meant to function as notices of the class action, as required under § 78u–4(a)(3)(A)(i), which requires:

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

(I) of the pendency of the action, the claims asserted therein, and the purported class period, and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

They further argue that the letters are consistent with Rule 23(c)(2) of the Feder-

---

**1.** The Court's comments should not be construed as categorically sanctioning the meth-

ods utilized by Weiss & Yourman.

al Rules of Civil Procedure, which requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

NIG's argument that the letters are valid forms of notice under the PSLRA is unavailing, because the notice provision contained in § 78u–4(a)(3)(A)(i) specifically calls for notice in "a widely circulated national business-oriented publication or wire service." It does not provide for direct notice to shareholders. Further, their reliance on Fed.R.Civ.P. 23(c)(2) is not persuasive either. Rule 23(c)(2) provides that, in a class action, *"the court shall direct* to the members of the class the best notice practicable under the circumstances...." Fed.R.Civ.P. 23(c)(2). There is no suggestion that the Court directed W & Y to make direct notice to the class members.[2]

■ Nonetheless, the Court is not convinced that the notice letter is a solicitation. The letter contains the information that would be included in a notice of class action; that is, the fact of the pendency of the action, the class period, and the claims asserted. *See* § 78u–4(a)(3)(A)(i)(I). In its reply, NALPG argues, "In its first paragraph the W & Y letter ... identifies the class; the second identifies W & Y as counsel to the class; and the final paragraphs inform of the steps to be taken in order to retain W & Y. There can be no question that it is a solicitation letter." (Reply at 5.) However, this critique could also describe the notice that NALPG published on April 7, 1999. (*See* Notice of Publication, Ex. A.) Therefore, the Court

is not persuaded that this was a solicitation.[3]

## C. *False and Misleading*

■ NALPG also argues that the notice letters were false and misleading. They argue that the letters gave the false impression that they were related to participation in a settlement fund, rather than joining in a lawsuit as plaintiff. Specifically, *NALPG* has submitted the declaration of Linda Anderson, an executive with Glickenhaus & Co., a company that was targeted by W & Y. In her declaration, Ms. Anderson explains that a cashier in the Operations Department at Glickenhaus, William Rodriguez, received the notice sent by W & Y and mistakenly believed that it was a routine class notice related to the settlement of a class action. (Anderson Decl. ¶ 6.) Mr. Rodriguez then called W & Y and asked for a "claim form," and received by return mail a blank certification form on which he listed Glickenhaus' purchases of Network Associates' stock, and signed and returned the form thereby becoming a plaintiff in this action. (*Id.* ¶ 5.) Ms. Anderson opines that the procedure employed by W & Y is designed to mislead institutions such as Glickenhaus.

The Court is not persuaded by this argument. The notice sent by W & Y explicitly states. "If you wish to join the group of lead plaintiffs, please complete and execute the enclosed form of Certification and return it to us as promptly as possible...." (Gilardi Decl., Ex. B.) There is no language in the notice letter that suggests that a settlement exists. Further, it is not

---

**2.** For the same reason, their reliance on *Ravens v. Iftikar*, 174 F.R.D. 651, 676 (N.D.Cal. 1997) is unavailing. In that case, Judge Walker directed plaintiffs' counsel in a securities class action to consider mailing the notice to investors. *Id.* The very fact that the court in that instance directed the plaintiffs to utilize a particular type of notice distinguishes it from the case at bar.

**3.** NIG also argues that the First and Fourteenth Amendments preclude a ban on written advertisements by attorneys. It is true

that the states cannot, consistent with the First and Fourteenth Amendments, categorically preclude lawyers from soliciting legal businesses for pecuniary gain by sending truthful and nondeceptive letters to potential clients known to face particular legal problems. *See Shapero v. Kentucky Bar Association*, 486 U.S. 466, 475–78, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). However, this is not particularly relevant to the analysis in this matter, since there is no suggestion that the state has enacted any regulation precluding such advertisements.

entirely plausible that large institutional investors are so easily mislead.

For the foregoing reasons, the Court is not persuaded that NIG violated either the PSLRA or any rules of professional conduct.

## II. *Analysis*

■ Even if W & Y *did* violate the PSLRA or the rules of professional conduct, the relevant question in regard to this motion is whether such conduct renders NIG less than adequate to represent the plaintiffs in this matter.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides:

> (T)he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4 (a)(3)(B)(iii)(I). The above presumption may be rebutted,

> [O]nly upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4 (a)(3)(B)(iii)(II). Furthermore,

> [D]iscovery related to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is in-

capable of adequately representing the class.

15 U.S.C. § 78u–4 (a)(3)(B)(iv).

NALPG argues that NIG will not adequately represent the class in this matter. In the Ninth Circuit, a two-part test determines whether the representative parties adequately represent the class in a class action: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1997). Analyzing the instant matter under the above standard (something that NALPG *fails* to do in their briefs), as to the first prong, there is *no* suggestion by NALPG that NIG has any conflict of interest. In regard to the second prong, the Ninth Circuit has said, "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Id.* at 1021. Since this case is not in the context of settlement, the inquiry focuses on competency. The arguments of NALPG do not persuade the Court that W & Y lack the competence to vigorously prosecute this action. As already explained, the Court finds unavailing NALPG's argument that NIG has violated the securities laws or the rules of professional conduct. NALPG has offered no other facts or evidence suggesting a lack of competence on the part of W & Y. Therefore, the Court finds that NALPG has not demonstrated a reasonable basis for finding that NIG is incapable of adequately representing the class. In addition, the Court would point out that NIG consists of five institutional investors who allegedly suffered $60 million in damages from their purchase of Network Associates, Inc. stock. (Opp'n at 1.) In enacting the PSLRA, Congress "unequivocally expressed its preference for securities fraud litigation to be directed by large

institutional investors." *Gluck v. Cellstar Corp.*, 976 F.Supp. 542, 548 (N.D.Tex. 1997). This further undermines NALPG's contention that NIG is incapable of representing the class.

Discovery is only warranted if a reasonable basis exists for a finding that the presumptively most adequate plaintiff is *incapable* of adequately representing the class. § 78u–4 (a)(3)(B)(iv). For the foregoing reasons, the Court finds that NALPG has failed to make such a showing. Accordingly,

IT IS HEREBY ORDERED THAT Network Associates Lead Plaintiff Group's Miscellaneous Ex Parte Request Pursuant to Local Rule 7–11(e) Regarding Motions for Appointment of Lead Plaintiff and Lead Counsel [37–1] is DENIED.